UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

LA DOLCE VITA FINE DINING COMPANY          :
LIMITED and LA DOLCE VITA FINE DINING      :
GROUP HOLDINGS LIMITED,                     :
                            Petitioners,          :
                                         :
         v.                                           :
                                         :
ZHANG LAN, GRAND LAN HOLDINGS               :
GROUP (BVI) LIMITED, and QIAO JIANG         :
LAN DEVELOPMENT LIMITED f/k/a SOUTH         :
BEAUTY DEVELOPMENT LIMITED,                  :
                                         :
                       Respondents.        :
-------------------------------------------------------------------: x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: ___12/11/2020___

1:19-mc-00536-ALC
**OPINION AND ORDER**

**ANDREW L. CARTER, JR., District Judge:**

      Respondents Zhang Lan ("Zhang"), Grand Lan Holdings Group (BVI) Limited ("GL Holdings"), and Qiao Jiang Lan Development Limited ("QJL Development") (collectively, "Respondents") moved to dismiss the instant action and vacate an order of attachment issued on November 21, 2019 on the grounds of insufficient service and lack of personal jurisdiction. ECF No. 57. For the reasons that follow, Respondents' motion is DENIED.

## BACKGROUND

      La Dolce Vita Fine Dining Company Limited and La Dolce Vita Fine Dining Group Holdings Limited (together "LDV" or "Petitioners") sought the attachment order at issue here to satisfy two arbitration awards entered by the China International Economic and Trade Arbitration Commission ("CIETAC") against Respondents.

      In December 2013, Petitioners acquired a majority stake in non-party South Beauty Investment Company Limited ("South Beauty"). As part of this purchase, Petitioners paid Respondents a total of $286,850,887. After the acquisition, South Beauty's financial performance

worsened. By an investigation completed in 2015, Petitioners came to believe that South Beauty's transactional sales data had been manipulated.

On March 5, 2015, Petitioners commenced two arbitration proceedings against Respondents asserting claims for, among other things, fraud and misrepresentations by Respondents in connection with the acquisition of South Beauty. On April 28, 2019, the arbitral panel issued Arbitral Awards finding in favor of Petitioners on the merits of their misrepresentation and contract claims, dismissing Respondents' counterclaims, and awarding Petitioners a combined amount of $142,463,666.28 in compensatory damages. On July 8, 2019, Respondents filed two applications to set aside the Arbitral Awards with the Second China International Commercial Court. These applications are still pending.

On November 18, 2019, Petitioners brought an *ex parte* petition seeking an order of attachment pursuant to NY CPLR § 7502(c) in support of the Arbitral Awards. Petitioners sought to attach two paintings—Andy Warhol's "Little Electric Chair" (1965) and an untitled Martin Kippenberger self-portrait (1988) (together, the "Subject Paintings"). Petitioners allege the Subject Paintings were purchased by Respondent Zhang at a May 12, 2014 auction held at Christie's New York ("Christie's") and are owned or controlled by Respondents.

On November 21, 2019, this Court issued an *ex parte* attachment order. Thereafter, Christie's issued a garnishee's statement pursuant to NY CPLR § 6219, dated December 13, 2019, confirming that the Subject Paintings are in its custody or possession. On November 26, 2019, Petitioners filed a motion to confirm the attachment order, as required by CPLR § 6211(b). On November 27, 2019, Petitioners served the motion to confirm the attachment order, and supporting

documents[1] on Respondents by Federal Express sent to five law firms in Hong Kong and Beijing, China that represented Respondents in the underlying arbitration. According to Federal Express Tracking, delivery to each of these firms was made before December 2, 2019. On February 11, 2020, Petitioners served GL Holdings and QJL Development with the same papers by Federal Express at their registered mailing addresses in the British Virgin Islands. According to Federal Express Tracking, delivery to the BVI addresses was completed by February 13, 2020.

Respondents first contacted the Court by letter dated January 6, 2020. ECF No. 29. Therein, Respondents alleged that the Subject Paintings are not the property of Respondents, but of non-party Apex Lead Investment Holdings Limited ("Apex"). Respondents requested that the Court postpone its consideration of the motion to confirm the attachment order until the issue of Apex's ownership was resolved. *Id.* at 1-2. Petitioners and Respondents prepared to engage in discovery regarding the ownership of the Subject Paintings.

However, on January 28, 2020 Respondent sought leave to file a motion to dismiss for insufficient service of process because Petitioner had allegedly not complied with the requirements of New York Civil Practice Law and Rules § 6213. ECF No. 35. After a February 25, 2020, pre-motion conference, the Court granted Respondents leave to file a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5). On March 10, 2020, Respondents filed a motion to vacate the attachment order and to dismiss this matter. The motion asserts three deficiencies: (1) that Petitioners failed to properly effect service within the 60-day timeline prescribed by CPLR § 6213, requiring vacatur of the order of attachment and dismissal of this action for lack of personal

---

[1] The supporting documents are "Petitioner's notice of Motion to Confirm Order of Attachment (ECF Doc. 23), Petitioner's memorandum of law in support of the motion (ECF Doc. 24), and the Declaration of Steven B. Feigenbaum in support of the motion (ECF Doc. 25), attached to which were the Petition for an *ex parte* Order of Attachment (ECF Doc. 9), the Order of Attachment (ECF No. 20), and all other documents on which the Petition was based and the Order of Attachment was granted, and that were filed in support of the motion". ECF No. 61-18.

jurisdiction; (2) that Petitioners failed to articulate any basis for the assertion of personal jurisdiction over Respondents, requiring dismissal; and (3) that GL Holdings and QJL Development are not alleged to own the paintings at issue, so both must be dismissed from the action.

Petitioners counter (1) that service was proper because Respondents waived any objections thereto by an email waiving objections under NY CPLR § 6211(b) or by the January 6, 2020 letter to the Court, which did not raise any issue regarding service of process; (2) that service was adequate under the Federal Rules of Civil Procedure; and (3) that the Court has *quasi in rem* jurisdiction over Respondents. Petitioners further request that if the Court concludes service was inadequate, the Court grant them leave to re-serve Respondents through counsel or else enjoin the removal of the artwork from Christie's until Petitioners can move for a new order of attachment. Additionally, on October 1, 2020, while the instant motion was pending, Petitioners requested the Court's permission to begin discovery of non-party Apex regarding the ownership of the Subject Paintings.

## STANDARD

Federal Rule of Civil Procedure 12(b)(5) provides for dismissal of an action for insufficient service of process. "When a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010) (quoting *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005)).

## DISCUSSION

1.  Waiver of Objections to Service

As an initial matter, the Court considers Petitioners' argument that Respondents waived objections to service by a statement in an email and by not asserting that service was deficient in

Respondent's initial January 6, 2020 correspondence with the Court. The Court concludes Respondents did no such thing.

Petitioners contend that Respondents' statement by email that they would "not contest that service of the motion ha[d] been effected in accordance with CPLR § 6211(b)", ECF No. 61-9 at 2, waived all objections regarding service. According to Petitioners, "Respondents thereby specifically represented that sufficiency of service would not be an issue in this proceeding, leading Petitioners to believe there was no need to serve Respondents with a notice of waiver under Fed. R. Civ. P. 4(d)(2) or to apply to the Court for leave to use alternative service." Opp. at 2. The cabined language of Respondents' waiver belies Petitioners' broad interpretation. The Court therefore cannot conclude that Respondents waived all objections to service.

Nor is the Court persuaded that Respondents' January 6, 2020 letter waived objections to service of process by not raising them. Pursuant to Federal Rule of Civil Procedure 12(h), a party waives a defense of insufficient service of process by failing to include it in a responsive pleading or to raise it on a Rule 12 motion. Fed. R. Civ. P. 12(h)(1). The January 6, 2020 letter advised the Court that non-party Apex alleged to own the Subject Paintings and requested the Court postpone a decision on the motion to confirm until Apex could substantiate its claim of ownership. *See* ECF No. 61-12 at 2-3. None of the cases Petitioners cite provide any support for the proposition that Respondents' letter is tantamount to a responsive pleading or Rule 12 motion for purposes of waiver. Accordingly, the Court finds no waiver by the January 6, 2020 letter.[2]

---

[2] Having found no waiver, the Court necessarily rejects Petitioners' contention that they were lulled into not seeking out the foreign addresses of Respondents and were therefore not required to comply with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents *ab initio*. See ECF No. 60 at 17, 17 n.5.

Having concluded Respondents have not waived objections to service of summons, the Court proceeds to the question of sufficiency of service.

2.   Sufficiency of Service

Respondents contend Petitioners' attempts at service were insufficient under CPLR § 6213 for two reasons: (1) Petitioners did not comply with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Service Convention" or "Convention") and (2) no otherwise proper service occurred within 60 days of the issuance of the attachment order. Petitioners counter that their attempts at service were timely and proper under the Federal Rules and that any deficiency may be cured now. The Court concludes that (1) the Federal Rules and not CPLR § 6213 govern the time for service; (2) Petitioner's attempt at service on all parties in Hong Kong and China was ineffective under the Hague Service Convention; (3) service on Respondents GL Holdings and QJL Development by mail to the British Virgin Islands was timely under Rule 4(m) and proper under the Hague Service Convention and (4) service on Respondent Zhang should be effected now pursuant to Federal Rule of Civil Procedure 4(f)(3) by email on her New York counsel.

Respondents' argument is that CPLR § 6213 applies here and required Petitioners to effect service no more than 60 days after the attachment order was entered. Section 6213 provides, in relevant part, that: "[a]n order of attachment granted before service is made on the defendant against whom the attachment is granted is valid only if, within sixty days after the order is granted, a summons is served upon the defendant or first publication of the summons against the defendant is made pursuant to an order and publication is subsequently completed. . . . Upon such terms as may be just and upon good cause shown the court may extend the time, not exceeding sixty days, within which the summons must be served or publication commenced pursuant to this section,

6

provided that the application for extension is made before the expiration of the time fixed". CPLR § 6213. Because Petitioners did not request an extension for time to serve summons with 60 days, Respondents contend Section 6213 bars Petitioners from doing so now.

Petitioners, on the other hand, argue that the Federal Rules govern. The relevant Federal Rules of Civil Procedure here are 4(f) and 4(m). Rule 4(f) sets forth the manner of service internationally. It states: "Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents[3];
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>> (C) unless prohibited by the foreign country's law, by:
>>> (i) delivering a copy of the summons and of the complaint to the individual personally; or
>>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
> (3) by other means not prohibited by international agreement, as the court orders."

Fed. R. Civ. P. 4(f).[4]

---

[3] The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents "specifies certain approved methods of service" among its signatory countries and "'pre-empts inconsistent methods of service' wherever it applies". *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1507 (2017) (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698-99 (1988)). "The primary innovation of the Hague Service Convention . . . is that it requires each state to establish a central authority to receive requests for service of documents from other countries." *Id*. at 1508.

[4] This provision also applies to service on corporations abroad through Federal Rule of Civil Procedure 4(h)(2).

Rule 4(m) indirectly governs the timeliness of service internationally by setting a general 90-day time limit for service, from which Rule 4(f) service is excepted. It states: "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. . . .This subdivision (m) does not apply to service in a foreign country under Rule 4(f). . . ." The time for service allotted for service under Rule 4(m) has been recognized as "an irreducible allowance" that "applies to the full range of litigation". *Henderson v. United States*, 517 U.S. 654, 661-62 (1996). Therefore, that Rule 4(f) service is excepted from the general 90-day allowance can only be read to permit more, not less, time to serve.

Faced with a conflict between when service of summons  must be effected under the Federal Rules and Section 6213, the Court must first consider whether Rule 4(m) "answers the question in dispute". *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). "If it does, it governs—New York's law notwithstanding—unless it exceeds statutory authorization or Congress's rulemaking power." *Id.* (citing *Burlington N. R. Co. v. Woods*, 480 U.S. 1, 5 (1987)). The Court concludes that Rule 4(m) does answer the question of when service of summons must be accomplished. It answers that a plaintiff serving a summons internationally has at least 90 days to effect such service. Nor is there any reason to think Rule 4(m) exceeds statutory authorization or Congress's rulemaking power. "Congress has the power to prescribe procedural rules that differ from state-law rules even at the expense of altering the outcome of litigation." *Ferens v. John Deere Co.*, 494 U.S. 516, 524 (1990) (citing *Hanna* v. *Plumer*, 380 U.S.

460, 473 (1965)). The Court therefore concludes that Rule 4(m) controls the time for service, not CPLR § 6213[5].

Having concluded that Rule 4(m) controls, the Court now considers whether Petitioner's attempts at service complied with Rule 4(f). Here, Petitioners attempted to serve Respondents by Federal Express in three places: China, Hong Kong, and the British Virgin Islands. Under Rule 4(f)(2)(A)[6], this service would be proper if (1) "an international agreement allows but does not specify" mail service and (2) mail service complied with "the foreign country's law for service in that country in an action in its courts of general jurisdiction". Fed. R. Civ. P. 4(f)(2)(A).

It is clear at the first step of Rule 4(f)(2)(A) that service to China was insufficient. Article 10 of the Hague Service Convention encompasses service by mail. It states, in part, that, "[p]rovided the State of destination does not object, the present Convention shall not interfere with the freedom to send judicial documents, by postal channels, directly to persons abroad". Hague Service Convention, Article 10(a). China has objected to service by mail under Article 10. *See Zhang v. Baidu.com Inc.*, 932 F. Supp. 2d 561, 567 (S.D.N.Y. 2013). Accordingly, service by mail

---

[5] The cases on which Respondents rely to argue Section 6213 applies are not to the contrary. Several of the cases are unhelpful as they are state court cases where the Federal Rules have no applicability. *See Al-Dohan v. Kouyoumjian*, 93 A.D.2d 714 (1st Dep't 1983), *Abbott Installations, Inc. v. Carl Schenk, AG*, 110 A.D.2d 673 (2d Dep't 1985), and *Galbraith v. Yancik*, 77 Misc.2d 130 (N.Y. Sup. Ct. 1974). The federal cases cited by Respondents do not shed much light either. In *Lumbard v. Sasha*, the court recited, but did not apply, Section 6213's 60-day summons rule. 84 Civ. 0009 (JFK), 1984 WL 908 at *2 (S.D.N.Y. 1984). Moreover, when assessing the adequacy of the evidence of service filed by plaintiff, the *Lumbard* court applied the Federal Rules of Civil Procedure. *Id*. Another case on which Respondents rely, *Graubard Mollen Dannett & Horowitz v. Kostantinides*, addresses the question of whether "when an action is originally commenced in state court then removed to federal court, [] the technical requirements of Article 62 of the CPLR [must still] be satisfied". 709 F. Supp. 428, 429 (S.D.N.Y. 1989). That question is distinct from the one this Court now considers. *Foreign Exch. Trade Assocs., Inc. v. Oncetur, S.A.*, 591 F. Supp. 1496 (S.D.N.Y. 1984) and *New England Merchs. Nat'l Bank v. Iran Power Generation & Transmission Co.*, 495 F. Supp. 73 (S.D.N.Y. 1980) are most analogous to the case at bar, and reach the same conclusion as this Court that the Federal Rules govern.

[6] Rules 4(f)(1) and 4(f)(3) are not applicable here. Rule 4(f)(1) permits service "by any internationally agreed means of service that is reasonably calculated to give notice". The Supreme Court has made clear that the Hague Service Convention permits but does not "authorize" service by mail. *See Water Splash, 137 S. Ct. at 1513.* It therefore cannot be a predicate for Rule 4(f)(1) service here. Rule 4(f)(3) permits service as ordered by the Court. The Court did not previously issue an order permitting alternate service pursuant to Rule 4(f)(3).

to China is not a method of service "an international agreement allows but does not specify", as required by Rule 4(f)(2)(A).

The failure of mail service to China is not dispositive because Petitioners also attempted to serve all Respondents by mail to counsel in Hong Kong and Respondents GL Holdings and QJL Development by mail to the British Virgin Islands. Neither Hong Kong nor the British Virgin Islands have objected to service by mail under Article 10. *See Altos Hornos de Mexico, S.A.B. de C.V. v. Rock Res. Ltd.*, No. 15-CV-1671, 2015 U.S. Dist. LEXIS 144339, 2015 WL 6437384, at *2 (S.D.N.Y. Oct. 19, 2015) (Hong Kong); *See Active Sports Lifestyle United States v. Apparel Prods. Servs. Glob.*, No. CV 20-02056 PA (JCX), 2020 U.S. Dist. LEXIS 153782, at *7 (C.D. Cal. July 2, 2020) (BVI). Therefore, in both Hong Kong and BVI, service by mail is a method "an international agreement allows but does not specify." Fed. R. Civ. P. 4(f)(2)(A).

The next requirement of Rule 4(f)(2)(A) is that service complies with "the foreign country's law for service in that country in an action in its courts of general jurisdiction". Fed. R. Civ. P. 4(f)(2)(A)(1). Hong Kong law permits mail service in some instances. *See e.g.*, *Dev. Specialists, Inc. v. Li (In re Coudert Bros. LLP)*, No. 16-CV-8237 (KMK), 2017 U.S. Dist. LEXIS 71435, 2017 WL 1944162, at *26 (S.D.N.Y. May 9, 2017). However, the Court has found no provision of Hong Kong law that permits service by mail to counsel that has not been authorized to accept service of process, as was done here. Nor have Petitioners proffered any such provision. The Court therefore concludes Petitioners' attempt at service by mail to Hong Kong counsel is not authorized under Hong Kong law and was ineffective.

The British Virgin Islands, on the other hand, do authorize service by mail on corporate entities like Respondents GL Holdings and QJL Development. Rule 5.7 of the Civil Procedure

Rules of the Eastern Caribbean Supreme Court[7] permits service on a limited company "by telex, FAX or prepaid post or cable addressed to the registered office of the company".[8] Rule 5.9 allows for service on a "body corporate (other than a limited company)" "by prepaid post to the principal office of the body corporate, by serving the claim form personally on any principal officer of the body corporate, or in any other way allowed by any enactment". Section 101(1)(b) of the BVI Business Companied Act provides that "[s]ervice of a document may be effected on a company by addressing the document to the company and leaving it at, or sending it by a prescribed method to the company's registered office; or office of the company's registered agent." BVI Business Companies Act 2005[9]. At least one court has held that Rule 5.9 and Section 101(1)(b), taken together, authorize service by mail on a corporation. *See Dartell v. Tibet Pharm., Inc.,* Civil Action No. 14-3620, 2020 U.S. Dist. LEXIS 56820, at *14-15 (D.N.J. Mar. 24, 2020). This Court agrees.

Because the British Virgin Islands have not objected to mail service, and domestic law authorizes service by mail, the Court concludes that service on Respondents GL Holdings and QJL Development was proper under Rule 4(f)(2)(A). The mail was delivered by February 13, 2020, 84 days after issuance of the Order of Attachment. As judged against Rule 4(m), which allows at least 90 days for service in a foreign country, Petitioners' service on Respondents GL Holdings and QJL Development was timely.

---

[7] "The Eastern Caribbean Supreme Court (ECSC) was established in 1967 by the West Indies Associated States Supreme Court Order No. 223 of 1967. The ECSC is a superior court of record for the Organization of Eastern Caribbean States (OECS), including six independent states: Antigua and Barbuda, the Commonwealth of Dominica, Grenada, Saint Kitts and Nevis, Saint Lucia, Saint Vincent and the Grenadines and three British Overseas Territories (Anguilla, British Virgin Islands, and Montserrat). It has unlimited jurisdiction in each member State." *See* Eastern Caribbean Supreme Court, Press Release – Opening of the New Law Year 2020, available at https://www.eccourts.org/press-release-opening-of-the-new-law-year-2020/.
[8] Available online at https://www.eccourts.org/civil-procedure-rules/.
[9] Available online at https://www.bvifsc.vg/sites/default/files/bvi_business_companies_act_2004_with_2005_amendments.pdf.

This leaves the matter of service on Respondent Zhang, on whom service was only attempted by mail to counsel in China and Hong Kong, which was ineffective. The Court will grant Petitioners leave to re-serve[10] Respondent Zhang because she has actual notice of this proceeding—as shown by her counsel defending her in the instant motion, and service is readily achievable. *See Kovalesky v. A.M.C. Associated Merch. Corp.*, 551 F. Supp. 544, 546 (S.D.N.Y. 1982) ("Courts dismiss when the plaintiff has little likelihood of effecting proper service. . . . On the other hand, when the plaintiff can make proper service quickly, courts generally quash the faulty service without prejudice to the plaintiff to reserve.").

Assuming Respondent Zhang is abroad, service must comply with the Hague Service Convention. In order to resume litigating this matter without delay, the Court will allow Petitioners to serve Respondent Zhang by email on her counsel here in New York pursuant to Federal Rule of Civil Procedure 4(f)(3). *See Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 332 (S.D.N.Y. 2015) (holding that China's Article 10 objection "does not cover service by email"); *Baidu.com Inc.*, 293 F.R.D. at 511-12 (ordering alternate service on counsel, having concluded it does not contravene the Hague Service Convention and complies with due process). Petitioners must complete such service within seven days of this Opinion and Order issuing.

### 3.   Remaining Issues

Respondents also urge the Court to dismiss on two other grounds. They contend Petitioners failed to plead facts showing that the Court has personal jurisdiction over Respondents and that GL Holdings and QJL Development must be dismissed because they are not alleged to own the Subject Paintings. However, the Parties have already represented to this Court that they intend to

---

[10] Respondents have not argued that the package of documents Petitioners previously served or attempted to serve was in any way deficient. Petitioners are therefore directed to serve the same package of documents when re-serving Respondent Zhang.

engage in limited discovery on the ownership of the Subject Paintings. Because the resolution of the ownership question will bear on whether the Court has *in rem* jurisdiction, and over whom, the Court declines to consider that issue on this motion. The Court also denies without prejudice Petitioners' request for discovery of Apex to allow the Parties to meet and confer on that issue and how to proceed with this matter in light of the instant Opinion and Order.

CONCLUSION

For the reasons above, Respondents' motion is DENIED. The Court GRANTS Petitioners leave to serve Respondent Zhang within 7 days of the issuance of this Opinion and Order through her New York counsel by email pursuant to Federal Rule of Civil Procedure 4(f)(3). The Parties are ORDERED to file a joint status report two weeks after service on Respondent Zhang. The Clerk of Court is respectfully directed to close the motion at ECF No. 57.

**SO ORDERED.**

**Dated: December 11, 2020**
**New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**