**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

LA DOLCE VITA FINE DINING COMPANY
LIMITED and LA DOLCE VITA FINE DINING
GROUP HOLDINGS LIMITED,

                  Petitioners,

        - v. -

ZHANG LAN, GRAND LAN HOLDINGS GROUP
(BVI) LIMITED, and QIAO JIANG LAN
DEVELOPMENT LIMITED f/k/a/ SOUTH BEAUTY
DEVELOPMENT LIMITED,

                Respondents,

        - and –

APEX LEAD INVESTMENT HOLDINGS LIMITED,

                Intervenor-Respondent.

---

Case No.: 1:19-mc-00536-ALC

**ECF Case**

**Oral Argument Requested**

 

**MEMORANDUM OF LAW IN OPPOSITION TO PETITIONERS'**
**MOTION FOR LEAVE TO FILE SECOND AMENDED PETITION**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT .................................................................................... 1

LEGAL STANDARD .................................................................................................... 2

ARGUMENT ................................................................................................................. 3

I.   The Proposed Jurisdictional Allegations Are Futile ........................................ 3

    A.   Long-Arm Jurisdiction Over Zhang Is Not Available Under N.Y. C.P.L.R.
       § 302(a)(1) ................................................................................................ 4

    B.   Long-Arm Jurisdiction Over Zhang Is Not Available Under N.Y. C.P.L.R.
       § 302(a)(2) ................................................................................................ 5

    C.   The Allegation That Zhang "Utilized New York's Legal System" Does Not Support
       Personal Jurisdiction ................................................................................ 8

II.   The Proposed Fraudulent Conveyance Allegations Are Futile ...................... 10

    A.   The Alleged Invoice Updates Do Not Constitute A Fraudulent Conveyance Of The
       Subject Paintings .................................................................................... 10

    B.   The Alleged Funds Transfers Do Not Constitute A Fraudulent Conveyance Of The
       Subject Paintings .................................................................................... 11

III.   The Proposed Amendments Will Cause Undue Delay .................................... 12

CONCLUSION ............................................................................................................ 14

## TABLE OF AUTHORITIES

**Page(s)**

*Cases*

*Anderson v. Fed. Bureau of Prisons*,
    No. 10-0413 (PLF), 2011 WL 346079 (D.D.C. Feb. 3, 2011) ................................................. 10

*Barrett v. Local 804 Union*,
    18 CV 2046 (MKB), 2020 WL 4016016 (E.D.N.Y. July 16, 2020) ........................................ 13

*Barrett v. United Parcel Serv.*,
    18 CV 2046 (MKB)(LB), 2020 WL 4016826 (E.D.N.Y. May 14, 2020) ............................... 13

*Bensusan Rest. Corp. v. King*,
    126 F.3d 25 (2d Cir. 1997).................................................................................................... 6

*Broadhurst Invs., LP v. Bank of N.Y. Mellon*,
    No. 09 Civ. 1154(PKC), 2010 WL 3154840 (S.D.N.Y. Aug. 2, 2010)............................ 10, 13

*Burch v. Pioneer Credit Recovery, Inc.*,
    551 F.3d 122 (2d Cir. 2008)................................................................................................ 3

*Campinha-Bacote v. Tenney*,
    No. 10-CV-3165 (RRM)(ALC), 2011 WL 703936 (E.D.N.Y. Jan. 28, 2011) ......................... 2

*Campinha-Bacote v. Tenney*,
    No. 10-CV-3165 (RRM)(ALC), 2011 WL 705358 (E.D.N.Y. Feb. 17, 2011) ........................ 2

*DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*,
    No. 09 Civ 9605(ALC)(JLC), 2012 WL 4711677 (S.D.N.Y. Sept. 26, 2012) ................. 11, 12

*Granda v. Trujillo*,
    18 Civ. 3949 (PAE), 2019 WL 367983 (S.D.N.Y. Jan. 30, 2019) ........................................... 12

*Hallmark v. Cohen & Slamowitz, LLP*,
    299 F.R.D. 407 (W.D.N.Y. 2014)............................................................................................ 3

*Hunter v. Deutsche Lufthansa AG*,
    863 F.Supp.2d 190 (E.D.N.Y. 2012) ...................................................................................... 3

*John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*,
    22 F.3d 458 (2d Cir. 1994)..................................................................................................... 2

*Johnson & Johnson v. Guidant Corp.*,
    No. 06 Civ. 7685(RJS), 2010 WL 571814 (S.D.N.Y. Feb. 16, 2010) ...................................... 14

*Johnson v. Ward,*
    829 N.E. 2d 1201 (2005)..................................................................................... 4

*McCarthy v. Dun & Bradstreet Corp.,*
    482 F.3d 184 (2d Cir. 2007)............................................................................... 3

*Orlando v. Nxt-ID Inc.,*
    1:20-cv-1604 (MKV), 2021 WL 1143766 (S.D.N.Y. Mar. 23, 2021) ............................. 4, 6, 7

*Rates Tech. Inc. v. Cequel Commc'ns, LLC,*
    15 F. Supp. 3d 409 (S.D.N.Y. 2014)................................................................. 6

*Ronar, Inc. v. Wallace,*
    649 F. Supp. 310 (S.D.N.Y. 1986)................................................................... 7

*Ruffolo v. Oppenheimer & Co.,*
    987 F.2d 129 (2d Cir. 1993).......................................................................... 2, 3

*Simmons v. Nat'l R.R. Passenger Corp.,*
    19 Civ. 6986 (LGS), 2020 WL 2904847 (S.D.N.Y. June 3, 2020) ........................... 3

*State Farm Ins. Cos. v. Kop-Coat, Inc.,*
    183 F. App'x 36 (2d Cir. 2006) .................................................................... 13

*Sullivan v. Lakeram,*
    13 Civ. 7677 (NRB), 2016 WL 4097856 (S.D.N.Y. July 28, 2016) ........................ 9

*Wimmer v. Lumber Liquidators, Inc.,*
    07 CV 10599 (PED), 2010 WL 11712640, (S.D.N.Y. Nov. 8, 2010) ...................... 13

*Ziegler, Ziegler & Assocs. LLP v. China Digital Media Corp.,*
    No. 05 CV 4960(LAP), 2010 WL 2835567 (S.D.N.Y. July 13, 2010) ................... 6, 7

**Statutes**

N.Y. C.P.L.R. § 302(a)(1).................................................................................... 3, 4, 5

N.Y. C.P.L.R. § 302(a)(2)................................................................................... passim

N.Y. Debtor & Creditor L. § 270 (2019) ...................................................... 10

**Rules**

Fed. R. Civ. P. 15 ........................................................................................ 1, 2, 3

Fed. R. Civ. P. 41 ........................................................................................ 2

Zhang Lan ("Zhang"), Grand Lan Holdings Group (BVI) Limited ("GL Holdings"), and Qiao Jiang Lan Development Limited ("QJL Development") (collectively, "Respondents") respectfully submit this memorandum of law in opposition to Petitioners' Motion Under Rule 15(a)(2) For Leave To File A Second Amended Petition (the "Motion").

## PRELIMINARY STATEMENT

Petitioners commenced this action over a year-and-a-half ago, seeking an order of attachment in aid of foreign arbitrations then pending in China.  Among other things, Petitioners sought the attachment of two paintings in particular—Andy Warhol's "Little Electric Chair" (1965) and an untitled Martin Kippenberger self-portrait (1988) (together, the "Subject Paintings")—which Petitioners alleged to be the property of one or more of the Respondents. This Court granted the requested order on an *ex parte* basis, and Petitioners moved promptly for confirmation.  But then things got complicated.  In January 2020, Respondents advised the Court that Petitioners' action rested on a false premise, as the attached paintings were not the property of any of the named Respondents.  By the end of that month, Petitioners had requested that their motion to confirm be deemed withdrawn, explaining that a non-party to the proceeding—Apex Lead Investment Holdings Limited ("Apex")—had emerged and identified itself as the owner of the Subject Paintings.  In light of these developments, Petitioners proposed that confirmation of the attachment order be put on hold to permit discovery on the threshold question of ownership and control of the Subject Paintings, and in December 2020 Petitioners filed an amended petition adding Apex as Intervenor-Respondent.

Now, some seven months later, Petitioners seek to move again for confirmation of the *ex parte* order of attachment.  As a prelude to such a motion, however, Petitioners have requested leave under Rule 15(a)(2)  of the Federal Rules of Civil Procedure to overhaul their pleading through an extensive second round of amendments.  Petitioners propose these amendments not

because they believe them to be necessary—to the contrary, it is Petitioners' stated position that the amendments are *not* required.  Instead, Petitioners have advanced a hodgepodge of rationales for the new pleading, maintaining that the proposed amendments will "streamline" the proceeding by "[c]larifying" the jurisdictional bases of the action, by addressing "relevant developments" and "additional pertinent evidence," and by bringing the pleading "up to date and in conformance" with a pleading filed by Petitioners over a month ago *in a separate action* (an action which Petitioners have, moreover, agreed to dismiss without prejudice).  As discussed below, Petitioners' proposed amendments will only introduce further confusion into an already confused pleading.  The proposed amended petition is piled high with superfluous factual allegations, relies on facially inapplicable jurisdictional statutes, and interjects an unsustainable new "fraudulent conveyance" theory that has no basis in the facts as alleged.  Because the proposed amendments are futile and untimely, Petitioners' request to file the Second Amended Petition should be denied.[1]

## LEGAL STANDARD

Whether to grant leave to amend a pleading is a question left to the "sound discretion of the court."  *See John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994); *see also Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (per curiam).  Although leave to amend should be given "freely" where "justice so requires," Fed. R. Civ. P. 15(a)(2), the "amendment of a complaint is not an absolute right."  *Campinha-Bacote v. Tenney*, No. 10-CV-3165 (RRM)(ALC), 2011 WL 703936, at *1 (E.D.N.Y. Jan. 28, 2011), *report and recommendation adopted*, 2011 WL 705358 (E.D.N.Y. Feb. 17, 2011).  The district

---

[1] Respondents have no objection to the dismissal from this action of GL Holdings and QJL Development.  Such a dismissal does not require amendment of the pleadings, however, and can be readily accomplished by notice of dismissal or by stipulation.  See Fed. R. Civ. P. 41(a)(1)(A)(i)-(ii).

courts have "discretion to deny leave for good reason," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), and, indeed, "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam).  Leave to amend may also be denied where the proposed amendments appear "unlikely to be productive," *Ruffolo*, 987 F.2d at 131, or where the "allegations the plaintiff seeks to add are unnecessary to support the asserted claims."  *Hallmark v. Cohen & Slamowitz, LLP*, 299 F.R.D. 407, 410 (W.D.N.Y. 2014).

## ARGUMENT

### I.      The Proposed Jurisdictional Allegations Are Futile

In the proposed new pleadings, Petitioners allege for the first time that Zhang is subject to long-arm jurisdiction pursuant to N.Y. C.P.L.R. §§ 302(a)(1) and 302(a)(2) .  *See* Second Amended Petition for an Order of Attachment in Aid of Arbitrations ("SAP") ¶ 19.  These proposed jurisdictional allegations are futile, for, as discussed below, neither Section 302(a)(1) nor Section 302(a)(2) has any applicability under the facts as alleged.  *See Simmons v. Nat'l R.R. Passenger Corp.*, 19 Civ. 6986 (LGS), 2020 WL 2904847, at *5 (S.D.N.Y. June 3, 2020) (denying leave to amend where additional allegations "would not give rise to personal jurisdiction"); *see also Hunter v. Deutsche Lufthansa AG*, 863 F.Supp.2d 190, 202 (E.D.N.Y. 2012) (A "proposed amendment is 'futile' if the court would lack personal jurisdiction over the would-be defendant.").[2]

---

[2] Petitioners' brief in support of the Motion lacks any substantive analysis of the purported applicability of N.Y. C.P.L.R. §§ 302(a)(1) and 302(a)(2) to the facts as alleged.  *See* Petitioners' Memorandum of Law in Support of Their Motion Under Fed. R. Civ. P. 15(a)(2) for Leave to File a Second Amended Petition ("Pet. Mem.") 4, 10, 21, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 1:19-mc-00536-ALC, ECF No. 96 (S.D.N.Y. July 20, 2021).

### A.    Long-Arm Jurisdiction Over Zhang Is Not Available Under N.Y. C.P.L.R. § 302(a)(1)

Under N.Y. C.P.L.R. § 302(a)(1), a non-domiciliary defendant who has "transacted business" in New York may be subject to long-arm jurisdiction in the state, but only if the plaintiff's cause of action "arose from that transaction of business."  *See Johnson v. Ward*, 829 N.E. 2d 1201, 1202 (2005).  In order to satisfy this "nexus requirement," there must be a "substantial relationship" between a "defendant's transactions in New York and a plaintiff's cause of action."  *See id*. at 1202-03 ("[J]urisdiction is not justified where the relationship between the claim and transaction is too attenuated."); *see also Orlando v. Nxt-ID Inc.*, 1:20-cv-1604 (MKV), 2021 WL 1143766, at *5 (S.D.N.Y. Mar. 23, 2021) ("To establish jurisdiction, Plaintiffs must offer a nexus between [Defendant's] New York activity and their specific claims.").  In this action, the necessary nexus is absent, because the foreign arbitrations at issue here have no relationship to any "transaction of business" in New York.

As alleged by Petitioners, the underlying dispute arose halfway round the world, in connection with Petitioners' purchase of a "majority stake" in non-party South Beauty Investment Company Limited ("South Beauty"), a "company that owned a chain of restaurants in China."  *See* SAP ¶¶ 2, 27.  Not one of the parties to the arbitration proceedings (or to these proceedings) is alleged to be a New York domiciliary or resident:  According to the Second Amended Petition, Petitioners are limited liability companies incorporated under the laws of the Cayman Islands and with registered offices at the same Cayman Islands address, *id*. ¶¶ 10-11, while Zhang is alleged to be a "citizen and resident of China," *id*. ¶ 12, and GL Holdings and QJL Development are said to have been incorporated under the laws of the British Virgin Islands.  *Id*. ¶ 13; *see also* Amended Petition for an Order of Attachment in Aid of Arbitrations

("FAP") ¶¶ 12-13.[3]  The arbitration proceedings themselves are alleged to have taken place in Beijing before the China International Economic and Trade Arbitration Commission ("CIETAC"), SAP ¶ 2, and the arbitration awards are alleged to have been issued in China and affirmed by the Second China International Commercial Court.  *See id*. ¶¶ 2-3, 34-35.

In short, this is an action brought by foreign petitioners against foreign respondents in aid of foreign arbitral awards issued by a foreign arbitral panel in connection with a foreign commercial dispute.  Petitioners do not allege that the foreign arbitrations or the underlying commercial dispute have any link to New York, nor do they allege that Zhang herself has ever set foot in the State.  Instead, Petitioners' jurisdictional argument rests entirely on allegations that Zhang participated by telephone in an auction held in New York City—an auction that post-dated the South Beauty deal by several months—and that she successfully bid on, and subsequently arranged payment for, the Subject Paintings.  *See id*. ¶¶ 1, 19, 44, 46-58.  These allegations, even if accepted as true, cannot establish this Court's personal jurisdiction over Zhang under Section 302(a)(1), because the alleged purchase at auction of the Subject Paintings bears no relationship at all—much less a "substantial relationship"—to the acquisition deal that was the subject of the foreign arbitral proceedings.  Because Petitioners have alleged no nexus with any transaction of business in New York, Petitioners' proposed new pleadings under Section 302(a)(1) should be rejected as futile.

**B.    Long-Arm Jurisdiction Over Zhang Is Not Available Under N.Y. C.P.L.R. § 302(a)(2)**

Petitioners' reliance on Section 302(a)(2) is equally unavailing.  Long-arm jurisdiction is available under N.Y. C.P.L.R. § 302(a)(2) only where a defendant—whether in person or

---

[3] Apex is alleged to have been incorporated in the Republic of Seychelles, where it allegedly maintains a registered mailing address.  SAP ¶ 14.

through an agent—commits an allegedly tortious act "within the state." N.Y. C.P.L.R.

§ 302(a)(2). As the Second Circuit has made clear, Section 302(a)(2) reaches only tortious acts

performed while the defendant (or the defendant's agent) was "physically present in New York."

*See Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28-29 (2d Cir. 1997); *see also Orlando*, 2021

WL 1143766, at *3-4; *Rates Tech. Inc. v. Cequel Commc'ns, LLC*, 15 F. Supp. 3d 409, 417-18

(S.D.N.Y. 2014) (Carter, J.). "New York law construes strictly the § 302(a)(2) requirement that

the tort be committed while the defendant or its agent is physically present in the state." *Ziegler,*

*Ziegler & Assocs. LLP v. China Digital Media Corp.*, No. 05 CV 4960(LAP), 2010 WL

2835567, at *7 (S.D.N.Y. July 13, 2010).

Petitioners here do not allege that Zhang was ever physically present in New York, much

less that she engaged in tortious misconduct while physically present in the State. *See Rates*

*Tech.*, 15 F. Supp. at 418 ("Noticeably absent in this case are any allegations that [Defendant]

was present in New York . . . ."). This failure to allege Zhang's physical presence in New York

is fatal to any assertion of specific jurisdiction under Section 302(a)(2) based on Zhang's alleged

conduct. *See id.* ("Because Plaintiff has not illustrated [Defendant's] physical presence in New

York, it cannot sustain specific jurisdiction under § 302(a)(2).").

Nor do Petitioners allege that Zhang engaged in tortious conduct through any agent who

was "physically present" in New York. Petitioners make occasional opaque references in their

pleadings to unspecified "agents." For example, Petitioners allege that "Zhang *or* her agents

created . . . Metro Joy Trust . . . ." SAP ¶ 57 (emphasis added). However, the alleged "agents"

referenced in this sentence are unidentified, and there is no allegation that these unnamed agents

were present in New York or that the creation of Metro Joy Trust was in any way tortious.

Similarly, Petitioners allege that "Zhang and her agents . . . undertook a broad scheme to secrete

her assets worldwide . . . ."  *Id*. ¶ 72(iii).  Again, the alleged "agents" are unspecified, there is no suggestion of physical presence in New York, and the reference to a "broad scheme" is exceedingly imprecise.  Such allegations are far too inchoate to support personal jurisdiction under N.Y. C.P.L.R. § 302(a)(2).

Petitioners further allege that Zhang bid on the Subject Paintings through an "agent in New York," apparently a reference to "Xin Li," whom Petitioners elsewhere describe as "Zhang's agent at Christie's."  *See* SAP ¶¶ 46-47, 54(iv).  This allegation also does not even begin to support long-arm jurisdiction under Section 302(a)(2).  As an initial matter, the conclusory allegation that Ms. Li was "Zhang's agent at Christie's," *id*. ¶ 46, is insufficient to plead agency for jurisdictional purposes; a plaintiff must plead "specific facts that show agency," and Petitioners have alleged no such facts here.  *See Ronar, Inc. v. Wallace*, 649 F. Supp. 310, 316 (S.D.N.Y. 1986) ("bland and loosely anchored" allegations of agency insufficient to support personal jurisdiction under Section 302(a)).  Moreover, there is nothing even remotely tortious about Ms. Li's alleged conduct, which amounts to the relaying of telephonic bids at a Christie's auction.  *See Orlando*, 2021 WL 1143766, at *4 ("Plaintiffs fail to establish a *prima facie* showing of jurisdiction under section 302(a)(2) because Plaintiffs fail to allege any tortious acts in New York.").  Thus, even if these allegations about Xin Li are taken as true, they provide no basis for any assertion of personal jurisdiction under Section 302(a)(2).  *See Ziegler, Ziegler & Assocs.*, 2010 WL 2835567, at *7 ("Plaintiffs have failed to offer more than conclusory allegations in support of their contention that Defendant's putative agent committed a tort within New York.").[4]

---

[4] Petitioners further allege that Ms. Li communicated internally with other Christie's personnel regarding the purchase of and payment for the Subject Paintings, *see* SAP ¶¶ 46, 54(ii), and that Ms. Li received a couple of email communications from a third party, one regarding Apex's "correspondence address" and another regarding a payment delay.  *See id*. ¶¶ 52, 54(iv).  None of this alleged conduct is tortious, and Petitioners do not allege that any

In similarly conclusory fashion, Petitioners allege that "Rebecca Mo"—identified as a "Director at Cornucopiae Asset Management Ltd. in Hong Kong"—was an "agent of Zhang's," *see* SAP ¶¶ 52, 54(iv), and Petitioners also appear to allege that Cornucopiae Asset Management Ltd. itself was Zhang's agent. *See id.* ¶ 52 (describing the Hong Kong address of Cornucopiae Asset Management Ltd. as "Zhang's agent's" address).[5]  Even if these conclusory assertions sufficed to plead agency—they fall short by a wide margin—the allegations would not implicate N.Y. C.P.L.R. § 302(a)(2), because Petitioners do not allege that either Cornucopiae Asset Management Ltd. or Rebecca Mo engaged in any tortious conduct or were ever physically present in New York.

## C.   The Allegation That Zhang "Utilized New York's Legal System" Does Not Support Personal Jurisdiction

Petitioners' proposed pleading also includes a conclusory allegation that Zhang "utilized New York's legal system to help create a medley of companies, including Apex . . . ."  SAP ¶ 56. This allegation is apparently intended to establish some kind of jurisdictional footing, but it falls far short.  The suggestion that Zhang used "New York's legal system" to create Apex is not only unsupported by any factual allegations, but it is at odds with Petitioners' own position that Apex was incorporated in, and organized under the laws of, the Republic of Seychelles.  *See id.* ¶ 14.[6]

___

of it occurred while Ms. Li was "physically present" in New York.  Petitioners also allege that Zhang "instructed Xin Li to manipulate the billing documentation for her purchases so as to suggest that she herself was not the buyer," *id.* ¶ 51, but Petitioners do not allege that Xin Li took any action in response to the alleged instruction. Moreover, the use of the charged word "manipulate" is misleading:  Petitioners appear to be referring to their allegation that Christie's issued updated invoices directed at Apex and/or Zhang's son, Wang Xiaofei.  *See id.* ¶¶ 15, 44, 51-52.  The issuance of updated invoices by Christie's would not have been a tortious act, and in any event, Petitioners do not allege that Xin Li personally did any such thing; instead, Petitioners allege that "Christie's" was responsible for updating the invoices.  *See id.* ¶ 52 ("Christie's then amended its documentation . . . Christie's sent a revised invoice . . . Christie's then revised its June 11 invoice . . . .").

[5] Elsewhere in the second amended petition, Cornucopiae Asset Management Ltd. is described as a "company that Zhang owns or uses as her investment advisors."  SAP ¶ 52.

[6] It is also inconsistent with Petitioners' representation, made in a letter to this Court, that Zhang "acted outside New York to form Apex."  *See* Letter, *La Dolce Vita Fine Dining Co. Ltd. v Zhang*, 1:19-mc-00536-ALC, ECF No. 91 (S.D.N.Y. July 2, 2021).

This allegation about Zhang's purported use of "New York's legal system" to create Apex should be rejected as unfounded and futile.

The other companies in the purported "medley" are not even identified in the pleadings. Petitioners may have had Metro Joy International LLC and Metro Joy Management LLC in mind, inasmuch as both of these entities are alleged (in the very next paragraph of the pleading) to be registered with the New York Department of State's Division of Corporations as domestic limited liability companies sharing an address in Manhattan. *See id*. ¶ 57.  Petitioners appear to believe that their allegations regarding these Metro Joy entities have some jurisdictional significance, *see id*. ¶¶ 56-58, but no link to Zhang (or to Apex) is ever properly alleged. Petitioners claim in conclusory fashion that Metro Joy International LLC is a "shell company of Zhang," *id*. ¶ 42(x), but do not allege any facts in support of this claim.  Petitioners further allege that Zhang "put her ownership" of two Manhattan apartments in the names of Metro Joy International LLC and Metro Joy Management LLC, respectively, *see id*. ¶¶ 42(x), 57, but again, the allegation is conclusory and has no connection to this action, or to the foreign arbitral proceedings, or to the underlying commercial dispute over the South Beauty acquisition deal.[7] These proposed pleadings regarding Metro Joy International LLC and Metro Joy Management LLC are, in short, a distraction, and Petitioners should not be granted leave to insert them into their pleadings.  *See Sullivan v. Lakeram*, 13 Civ. 7677 (NRB), 2016 WL 4097856, at *6 (S.D.N.Y. July 28, 2016) (denying leave to add allegations found to be "without basis and otherwise not relevant"); *see also Anderson v. Fed. Bureau of Prisons*, No. 10-0413 (PLF), 2011

---

[7] Zhang's alleged ownership of the apartments is in some tension with Petitioners' position that at least one of the apartments was purchased not by Zhang but by yet another Metro Joy entity—Metro Joy International Limited— using funds provided by Success Elegant Trading Ltd., a company allegedly incorporated in the British Virgin Islands and allegedly held, at the time, not by Zhang, but by a "professional trust company incorporated in the Cook Islands."  *See* SAP ¶¶ 42(ii), (x).

WL 346079, at *1 (D.D.C. Feb. 3, 2011) ("Amendment of the complaint to include this irrelevant pleading would do nothing to modify the substance of the complaint, rendering the plaintiff's proposed amendment to include those facts futile.").

## II.     The Proposed Fraudulent Conveyance Allegations Are Futile

Petitioners additionally seek to add numerous allegations asserting, for the first time, that the Subject Paintings were "fraudulently conveyed" by Zhang to Apex.  *See* SAP ¶¶ 6, 19-20, 24(iii), 44, 49, 72-74.  These pleadings, too, should be rejected as futile, for the "fraudulent conveyance" theory is superfluous, and the facts as alleged do not support it.  *See Broadhurst Invs., LP v. Bank of N.Y. Mellon*, No. 09 Civ. 1154(PKC), 2010 WL 3154840, at *4-5 (S.D.N.Y. Aug. 2, 2010) (denying leave to allege alternative theory of liability where requested amendment was "unnecessary" and would "needlessly delay" action).

### A.     The Alleged Invoice Updates Do Not Constitute A Fraudulent Conveyance Of The Subject Paintings

In the proposed new pleading, Petitioners allege that Zhang fraudulently conveyed the Subject Paintings—or "ostensible ownership" thereof—to Apex through a "manipulation of Christie's invoices and related documents."  *See* SAP ¶¶ 19, 44, 72(iv).[8]  This reference to a "manipulation" of documents appears to be shorthand for Petitioners' allegation that Christie's issued updated invoices to Apex and/or to Zhang's son.  *See id*. ¶¶ 15, 44, 51-52.  However, even if Christie's did, as alleged, issue updated invoices for the Subject Paintings, such a change in the billing documentation would not have constituted a "conveyance," fraudulent or otherwise.  *See* N.Y. Debtor & Creditor L. § 270 (2019) (defining "[c]onveyance" to include "every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible

---

[8] This reference to a conveyance of "ostensible ownership" of the Subject Paintings occurs repeatedly, and without explanation, in the pleading.  *See, e.g.*, SAP ¶¶ 19-20, 43, 72-73.

property, and also the creation of any lien or incumbrance").  These proposed allegations thus fail to plead a conveyance of the Subject Paintings, much less a fraudulent one.

### B.   The Alleged Funds Transfers Do Not Constitute A Fraudulent Conveyance Of The Subject Paintings

Petitioners also seek to add allegations regarding a sequence of funds transfers that, according to Petitioners, illustrates "Zhang's payment for the [Subject Paintings]."  *See* SAP ¶¶ 54-55.  These allegations, too, fail to plead a fraudulent conveyance of the Subject Paintings from Zhang to Apex.

Petitioners allege that payment for the Subject Paintings was made in three installments, each following the same pattern:  A wire transfer from Zhang to her son, followed by a wire transfer in the same amount from Zhang's son to a Christie's bank account in New York.  *See id.* ¶¶ 54(i), (iii), (v).  These allegations, even if taken as true, do not describe a conveyance of the Subject Paintings to Apex.  What is alleged is a transfer of funds, not a conveyance of any paintings, and Apex does not even figure in the sequence.  *See DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*, No. 09 Civ. 9605(ALC)(JLC), 2012 WL 4711677, at *4 (S.D.N.Y. Sept. 26, 2012) (denying leave to add allegations regarding irrelevant monetary transfers).[9]  Perhaps Petitioners intended to suggest that one or more of these purported wire transfers was itself a fraudulent conveyance.  But which ones?  The alleged transfers from Zhang to her son?  The

---

[9] Notwithstanding Petitioners' apparent allegation that Zhang wired funds from her own UBS AG account to her son's account—*see* SAP ¶¶ 54(i), (iii), (v); Pet. Mem. at 19-20—the documents cited in Petitioners' brief suggest that the transfers were in fact made from a Credit Suisse account in Singapore held by Success Elegant Trading Limited.  *See* Pet. Mem. at 19-20; Exs. 20, 23, 26 of Declaration of Steven B. Feigenbaum in Support of Motion under Rule 15(a)(2) for Leave to File Second Amended Petition ("Feigenbaum Decl."), *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 1:19-mc-00536-ALC, ECF No. 97 (S.D.N.Y. July 20, 2021); *see also* FAP ¶ 40(vii) (alleging that the funds transfers were made by "Zhang, *through SETL* [Success Elegant Trading Ltd.]" (emphasis added)).  Moreover, although Petitioners have alleged that Zhang was the sole shareholder of Success Elegant Trading Limited, they have further alleged that this was the case only "until June 4, 2014," when Zhang allegedly transferred her ownership in the company to Asiatrust Ltd.  *See* SAP ¶ 42(ii).  Each of the purported fund transfers is alleged to have occurred after June 4, 2014, and thus after the alleged transfer of ownership to Asiatrust Ltd.  *See id.* ¶¶ 54(i), (iii), (v); Pet. Mem. at 19-20.

alleged transfers from Zhang's son to Christie's?  All of them?  None of them?  Fraudulent

conveyance can scarcely be said to have been well-pled where it remains a mystery exactly who

is alleged to have fraudulently conveyed what to whom.  *See Granda v. Trujillo*, 18 Civ. 3949

(PAE), 2019 WL 367983, at *9-10 (S.D.N.Y. Jan. 30, 2019) (dismissing claims for constructive

and actual fraudulent conveyance where facts were not pled with "sufficient particularity"); *see*

*also DDR Constr. Servs.*, 2012 WL 4711677, at *3-4 (denying leave to amend where, among

other things, failure to plead fraud with requisite particularity rendered proposed amendment

futile).  Given the inadequacy of these pleadings, Petitioners' effort to interject a theory of

fraudulent conveyance into this action should be rejected as futile.[10]

## III.    The Proposed Amendments Will Cause Undue Delay

Petitioners' proposed allegations are also improper because they come too late.  From the

outset of this litigation, Petitioners have been alleging that Zhang purchased the Subject

Paintings at auction, *see* Petition for an *Ex Parte* Order of Attachment in Aid of Arbitrations

¶¶ 4, 32-34, *La Dolce Vita Fine Dining Co. Ltd. v Zhang*, 1:19-mc-00536-ALC, ECF No. 9

(S.D.N.Y. Dec. 2, 2019), and Petitioners offer no excuse for waiting over eighteen months to

ascribe jurisdictional significance to these allegations.  Similarly, the alleged funds transfers

from Zhang to her son—transfers which Petitioners now allege "amount to a fraudulent

conveyance" and form part of the "basis for the Court's personal jurisdiction over Zhang," SAP

¶ 44—were alleged by Petitioners in their immediately previous pleading, *see* FAP ¶ 40(vii), and

also appear to be set forth in a March 2017 affidavit—allegedly submitted by Petitioners in

proceedings commenced in Hong Kong and Singapore—that is cited extensively in Petitioners'

---

[10] Petitioners allege that the purported transfers from Zhang to her son involved accounts at "UBS AG."  *See* SAP
¶¶ 54(i), (iii), (v).  The locations of these accounts are unspecified in the pleadings, and it is unclear what has led
Petitioners to believe that these transfers should be analyzed under New York state law.

proposed pleading.  *See* SAP ¶¶ 22-24, 37, 42, 45; Feigenbaum Decl., Ex. 6 (Affidavit of Cosimo

Borrelli ¶ 62).  Here again, Petitioners have offered no explanation for having waited so long to

suggest that these alleged funds transfers—of which Petitioners have been aware for months, if

not years—can support theories of personal jurisdiction or fraudulent conveyance in this action.

Because Petitioners' belated reinterpretation of their own old allegations threatens to "unduly

delay the course of proceedings by . . . introducing new issues for discovery," Petitioners'

request for leave to amend should be denied.  *See State Farm Ins. Cos. v. Kop-Coat, Inc.*, 183 F.

App'x 36, 37-38 (2d Cir. 2006) (summary order).

Moreover, the proposed amended pleading asserts the same claim and seeks the same

relief as the prior pleading and, by Petitioners' own account, serves only to "update, clarify and

reinforce" the purported basis for that relief.  *See* Pet. Mem. at 9.  Indeed, it is Petitioners' stated

belief that the proposed amendments are not required at all, "under the federal rules or

otherwise."  *See* Letter, *La Dolce Vita Fine Dining Co. Ltd. v Zhang*, 1:19-mc-00536-ALC, ECF

No. 87 (S.D.N.Y. June 24, 2021).  Courts have denied leave to add superfluous, purportedly

clarifying allegations that do not "substantively advance plaintiff's claims."  *See Barrett v.

United Parcel Serv.*, 18 CV 2046 (MKB)(LB), 2020 WL 4016826, at *2-3 (E.D.N.Y. May 14,

2020), *report and recommendation adopted*, 2020 WL 4016016 (E.D.N.Y. Jul. 16, 2020); *see

also Wimmer v. Lumber Liquidators, Inc.*, 07 CV 10599 (PED), 2010 WL 11712640, at *2

(S.D.N.Y. Nov. 8, 2010) ("[S]uch alteration is needless and will serve only to unnecessarily

delay this action." (citation and quotation marks omitted)); *Broadhurst Invs.*, 2010 WL 3154840,

at *4-5 ("The amendment sought by plaintiffs is unnecessary and will needlessly delay this

action.").  For these reasons, too, Petitioner's motion for leave to amend should be denied.  *See

Johnson & Johnson v. Guidant Corp.*, No. 06 Civ. 7685(RJS), 2010 WL 571814, at *11

(S.D.N.Y. Feb. 16, 2010) ("The interest in closing the pleadings and continuing the discovery process outweighs any benefit in allowing Plaintiff to add unnecessary allegations to its existing cause of action.").

## CONCLUSION

For the foregoing reasons, Respondents respectfully request that this Court deny Petitioner's Motion and grant such other and further relief as this Court deems appropriate.

Dated:  New York, New York
      August 6, 2021               Respectfully submitted,

**BINDER & SCHWARTZ LLP**

By:    /s/ Eric B. Fisher
        Eric B. Fisher
        M. Tomas Murphy
        366 Madison Avenue, 6th Floor
        New York, NY 10017
        (212) 510-7008
        efisher@binderschwartz.com
        tmurphy@binderschwartz.com

*Attorneys for Respondents Zhang Lan,*
*Grand Lan Holdings Group (BVI) Limited*
*and Qiao Jiang Lan Development Limited*