UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LA DOLCE VITA FINE DINING COMPANY
LIMITED and LA DOLCE VIYA FINE DINING
GROUP HOLDINGS LIMITED,,

                                Petitioners,

           - against -

ZHANG LAN, GRAND LAN HOLDINGS GROUP
(BVI) LIMITED, and QIAO JIANG LAN
DEVELOPMENT LIMITED f/k/a SOUTH BEAUTY
DEVELOPMENT LIMITED,

                            Respondents,

.         - and -

APEX LEAD INVESTMENT HOLDINGS LIMITED,

                        Intervenor-Respondent.

Case No. 19 Misc. 536  (ALC)

## INTERVENOR-RESPONDENT'S
## MEMORANDUM OF LAW IN OPPOSITION TO
## PETITIONERS' MOTION FOR LEAVE TO FILE A SECOND AMENDED PETITION

Daniel P. Goldberger
Joshua R. Kornfield
DORSEY & WHITNEY LLP
51 West 52nd Street
New York, NY 10019
(212) 415-9200

*Attorneys for Intervenor-Respondent*
*Apex Lead Investment Holdings*
*Limited*

# TABLE OF CONTENTS

Page(s)

INTRODUCTION ....................................................................................................4

ARGUMENT ...........................................................................................................5

I.      Standards on Motions for Leave to Amend ........................................................5

II.     Petitioners' Purported Justifications for the SAP Are Patently Insufficient to
        Justify Leave to Amend ..................................................................................6

III.    The Proposed Amendments are Futile ...............................................................8

        A.      This Court Must Assess Whether Petitioners Fail to State Fraudulent
                Conveyance Claims ...............................................................................8

        B.      The SAP Fails to Plausibly Allege or Allege with Sufficient Particularity
                Facts Showing a Fraudulent Transfer Between Zhang and Apex..........................9

        C.      The SAP Fails to Plausibly Allege or Allege with Sufficient Particularity
                Facts Supporting Turnover of the Artwork under CPLR § 5225(b). ....................15

        D.      Petitioners Fail to Demonstrate that New York Law Applies. ...........................16

        E.      Petitioners' Fraudulent Conveyance Claims are Time-Barred ..........................18

IV.     Granting Leave to Amend Would Unduly Prejudice Apex ...............................................20

Conclusion ...............................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe*,
  34 F. Supp. 3d 311 (S.D.N.Y. 2014)....................................................................20

*In re Allou Distributors, Inc.*,
  446 B.R. 32 (Bankr. E.D.N.Y. 2011).............................................................18, 19

*Comfort Inn Oceanside v. Hertz Corp.*,
  No. 11-CV-1534 (JG) (JMA), 2011 U.S. Dist. LEXIS 126294 (E.D.N.Y. Nov.
  1, 2011) ...........................................................................................................10, 11

*Francis v. Kings Park Manor, Inc.*,
  992 F.3d 67 (2d Cir. 2021)..................................................................................5

*Frenkel v. New York City Off-Track Betting Corp.*,
  611 F. Supp. 2d 391 (S.D.N.Y. 2009)................................................................20

*Health-Chem Corp. v. Baker*,
  915 F.2d 805 (2d Cir. 1990).................................................................................5

*Joblove v. Barr Labs., Inc. (In re Tamoxifen Citrate Antitrust Litig.)*,
  429 F.3d 370 (2d Cir. 2005).................................................................................5

*Kalb, Voorhis & Co. v. Am. Fin. Corp.*,
  8 F.3d 130 (2d Cir. 1993) ..................................................................................11

*Kassner v. 2nd Ave. Delicatessen, Inc.*,
  496 F.3d 229 (2d Cir. 2007).................................................................................5

*La Dolce Vita Fine Dining Company et al. v. Zhang Lan et al.*,
  No. 21-3178 (MKV) .............................................................................................6

*Ladjevardian v. Republic of Argentina*,
  No. 06-cv-3276 (TPG), 2016 U.S. Dist. LEXIS 69348 (S.D.N.Y. May 26,
  2016) ....................................................................................................................16

*Lee v. Regal Cruises*,
  916 F. Supp. 300 (S.D.N.Y. 1996)......................................................................5

*Liberty Co. v. Boyle*,
  272 A.D.2d 380 (2d Dep't 2000) ...................................................................18, 20

*Monahan v. New York City Department of Corrections*,
  214 F.3d 275 (2d Cir. 2000)...............................................................................20

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
    453 F. Supp. 2d 633 (S.D.N.Y. 2006)......................................................................a

*Rolon v. Henneman*,
    517 F.3d 140 (2d Cir. 2008)...............................................................................5

*Tronox Inc. v. Kerr-McGee Corp. (In re Tronox Inc.)*,
    855 F.3d 84 (2d Cir. 2017).................................................................................11

*Universitas Educ., LLC v. Nova Grp., Inc.*,
    2013 U.S. Dist. LEXIS 165803 (S.D.N.Y. Nov. 20, 2013).........................13, 14, 18

## Statutes

28 U.S.C. § 1331.....................................................................................................7

## Other Authorities

CPLR § 5225(b)..........................................................................................7, 15, 16

Fed R. Civ. P. 15(a)................................................................................................5

Respondent Apex Lead Investment Holdings Limited ("Apex") respectfully submits this memorandum of law in opposition to Petitioners' Motion Under Rule 15(a)(2) for Leave to File a Second Amended Petition (the "Motion").

## **INTRODUCTION**

In their Motion, Petitioners seek leave to file a second amended petition (the "SAP") in this case. Allowing them to do so would be futile. Apparently recognizing that the factual allegations and legal theory set forth in their first amended petition (the "FAP") will not yield their desired relief, they now seek wholesale amendments that largely abandon their prior allegations and legal theory in favor of new allegations under a new fraudulent conveyance theory. Despite Petitioners' unsupported claims to the contrary, their fraudulent conveyance "theory" is not premised on new facts learned in discovery; rather, it is a transparent attempt to avoid dismissal that relies upon a misleading presentation of facts that have been known to Petitioners for years. Here, whether styled as a cause of action or a "legal theory in support of an attachment," Petitioners' fraudulent conveyance allegations are indisputably time-barred—regardless of the law applied—as the legally relevant transfers all occurred more than six years before Petitioners brought this claim.

Petitioners' proposed fraudulent conveyance-related amendments are also insufficient because they rely upon naked, conclusory, and implausible allegations, the most significant of which are squarely contradicted by the documents that accompany Petitioners' Motion. In short, Petitioners fail to plead with requisite particularity the facts necessary to state a claim for a fraudulent conveyance, rendering the proposed amendments in the SAP futile for this reason, as well.

As Petitioners conceded in their pre-motion letter to the Court, their proposed amendments are not necessary (Dkt. No. 87 at 2), and granting Petitioners leave to amend will

only cause unnecessary delay. This dispute boils down to a single issue: who is the rightful owner of the artwork: Apex or Zhang. The proposed additional allegations and legal theory in the SAP do not advance the resolution of that issue because any claims of ownership that rely upon "principles of fraudulent conveyance law" are indisputably time-barred—whether under New York law or Chinese law. Because Petitioners' fraudulent conveyance claim—or legal theory underlying that claim—is time-barred and insufficiently pled, Petitioners' proposed amendments are futile and leave should accordingly be denied.

## ARGUMENT

### I.      Standards on Motions for Leave to Amend

"A district court has broad discretion to decide whether to grant leave to amend." *Joblove v. Barr Labs., Inc. (In re Tamoxifen Citrate Antitrust Litig.)*, 429 F.3d 370, 404 (2d Cir. 2005).  Although leave to amend should be freely granted when justice so requires, *see* Fed R. Civ. P. 15(a), courts may deny leave if, among other things, the amendment would be futile or the opposing party would be prejudiced.  *Lee v. Regal Cruises*, 916 F. Supp. 300, 303 (S.D.N.Y. 1996).  An amendment is futile if it is insufficient to withstand a motion to dismiss.  *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990); *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 89 (2d Cir. 2021).  In reviewing the sufficiency of allegations, courts "accept all factual allegations in the complaint (and documents incorporated by reference therein) as true," *id.*, but "are not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions."  *Rolon v. Henneman*, 517 F.3d 140, 148-49 (2d Cir. 2008).

## II.     Petitioners' Purported Justifications for the SAP Are Transparent and Patently Insufficient to Justify Leave to Amend

As shown by Petitioners' redline, the SAP is a wholesale revision of the FAP.  *See generally* Declaration of Steven B. Feigenbaum in Support of Motion under Rule 15(a)(2) for Leave to File Second Amended Petition ("Feigenbaum Decl."), at Ex. 5 [Dkt. 97-5].  Petitioners claim their proposed amendments are necessary to "update[ ], clarif[y] and reinforce[] the factual, legal and jurisdictional bases for confirmation of the Arbitral Awards"[1], which the FAP purportedly does by:

> (i)      "taking into account relevant developments since the filing of the First Amended Petition, including the affirmance of the Arbitral Awards;
>
> (ii)     "incorporating additional pertinent evidence derived from discovery of Apex – all of which took place after the filing of the First Amended Petition – and from Petitioners' own further factual investigations in light of some of Apex's documents;
>
> (iii)    "dropping Grand Lan Holdings and Qiao Jiang Lan as respondents, and thereby helping to streamline this proceeding, since discovery has shown that Zhang alone, not her companies (other than as Zhang's alter egos), has control over and an interest in the Artworks;
>
> (iv)     "clarif[ying] the bases of the Court's subject matter and personal jurisdiction;
>
> (v)      "add[ing] the allegation that Zhang's purported conveyance of the Artworks to Apex was fraudulent, and invokes New York principles of fraudulent conveyance law as an alternative and independent basis on which to confirm the Attachment Order; and
>
> (vi)     "otherwise conform[ing] Petitioners' pleading to the record, to Petitioners' requested motion to confirm the Attachment Order, and to the existing amended petition filed on June 17, 2021 in the civil action, *La Dolce Vita Fine Dining Company et al. v. Zhang Lan et al.,* No. 21-3178 (MKV),

---

[1] Despite Petitioners' statement, this is not a proceeding to confirm its foreign arbitral awards; rather this proceeding will determine whether Petitioners have established a legal interest in two paintings that justifies a pre-judgment attachment.

> pending before Judge Vyskocil and in which Petitioners intend to move
> for the turnover of the Artworks under CPLR § 5225(b) (the 'Civil
> Action')."[2]

Pet. Memo. at 2. To the contrary, even the most cursory review of the proposed amendments set forth in the SAP reveals that the Petitioners' proposed amendments cannot be squared with Petitioners' stated reasons for amending. In particular, it is apparent that Petitioners have abandoned their alter ego theory (whereby they alleged that Zhang was the actual or constructive owner of the artwork) in favor of a new fraudulent conveyance theory. Because the proposed amendments relate primarily to this new legal theory, Apex directs the focus of its Opposition on Petitioners' new fraudulent conveyance allegations.[3]

In addition, the SAP does not "clarif[y] the bases of the Court's subject matter and personal jurisdiction." Rather, it seems to conflate subject matter jurisdiction and personal jurisdiction as Petitioners appear to allege that *in rem* jurisdiction is a species of subject-matter jurisdiction. *See* SAP ¶ 18 ("The Court has subject matter jurisdiction under 28 U.S.C. § 1331 . . . . The Court independently has *in rem* jurisdiction over the Artworks, both of which are held in this District."). If anything, the SAP calls the Court's subject-matter jurisdiction into question by requesting this Court apply New York "fraudulent conveyance principles" without asserting state fraudulent conveyance claims or otherwise invoking supplemental or diversity

---

[2] Based on an order from Judge Vyskocil (Case No. 1:21-cv-3178-MKV, Dkt. No. 42), Petitioners have agreed to dismiss this case without prejudice, rendering this basis for leave to amend moot.

[3] For example, there is no need for Petitioners to amend the FAP in order to drop parties (which can be done by stipulation), nor is there a legitimate basis **now** to amend the FAP to include the results of Petitioners' investigation of South Beauty, which concluded in 2015. *See, e.g.*, Feigenbaum Decl., Ex. 5 ¶¶ 38–41 (pp. 20-22). Likewise, the so-called "recent developments" are not, in fact, recent developments, but instead information for which Petitioners have been aware for years.

jurisdiction.  *See id.* at ¶ 24; *see also* SAP ¶¶ 18–22. In addition, and with respect to personal

jurisdiction, Petitioners cannot legitimately claim that they satisfy the jurisdictional bases under

CPLR § 302(a) as to Apex since as the SAP contains no allegations supporting such a claim.

Finally, the SAP's addition of allegations that Metro Joy Trust—an entity that is not a party to

this case—purchased property in New York unrelated to the property at issue in this case is

entirely irrelevant to issues of personal jurisdiction over respondents and to the broader issues in

this case.  *See, e.g.*, Feigenbaum Decl., Ex. 5 ¶ 42(x) (p. 24). The fact that Petitioners felt the

need to include such allegations demonstrates the weakness of their claims.

 In short, none of the bases for leave to amend supplied by Petitioners support granting

their application.

### III.   The Proposed Amendments are Futile

#### A.   This Court Must Assess Whether Petitioners Fail to State Fraudulent Conveyance Claims

Petitioners assert—in anticipation of Apex's statute of limitations arguments—that the

"Second Amended Petition does not . . . assert a claim per se for fraudulent conveyance, but

instead relies on fraudulent conveyance principles as an alternative and independent basis on

which to confirm the Attachment Order."  Pet. Memo. at 24.  In so doing, Petitioners appear to

suggest that, because the SAP does not bring "claims per se" for a fraudulent conveyance in this

action, this Court need not assess whether the SAP fails to state a cause of action for a fraudulent

conveyance or whether such claims are time barred.

This argument makes no sense—legally, factually, or logically. To the extent that this

Court looks to "fraudulent conveyance principles" to determine ownership of the artwork, the

Court must assess whether any fraudulent conveyance claims would succeed as a matter of law.

Otherwise, the "fraudulent conveyance principles" invoked by the SAP have no relevance to the

question of ownership. Indeed, Petitioners do not cite any authority to support the proposition that, under these circumstances, the Court need not determine whether the SAP supports a claim for a fraudulent conveyance. The Court should accordingly reject Petitioners' suggestion that they may reap the benefits of a fraudulent conveyance claim without meeting the legal standards applicable to such a claim.

**B.      The SAP Fails to Plausibly Allege or Allege with Sufficient Particularity Facts Showing a Fraudulent Transfer Between Zhang and Apex**

Essential to the SAP are its conclusory allegations that Zhang owns the artwork or, in the alternative, that Zhang fraudulently conveyed the artwork to Apex.  SAP ¶¶ 6, 24(iii), 49, 72. This is no accident.  Of all the alleged transfers in the SAP, the SAP misleadingly identifies the purported transfer of the artwork from Zhang to Apex as the sole basis for the Petitioners' fraudulent conveyance claim (as well as the basis for applying New York). In doing so, Petitioners either remove or minimize the previously pled transfers that preceded that "transfer" because they destroy Petitioners' argument. As explained in more detail below, a transfer of artwork is the only "transfer" that could possibly form the basis of a claim that is not obviously barred by the statute of limitations.  The SAP therefore hinges on the occurrence of a transfer of the artwork from Zhang to Apex, which does not even meet the definition of a "transfer" or "conveyance" under New York law.  *See* DCL § 270 (defining "conveyance" as "every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or encumbrance"). [4]

---

[4] Since the alleged transfers in this case occurred, New York repealed its prior fraudulent conveyance statutes and replaced them with the Uniform Voidable Transactions Act, which took effect April 4, 2020. The UVTA only applies to "transfer[s] made . . . on or after such effective date," so this Opposition cites prior New York law.  *See* Uniform Voidable Transactions Act § 7, 2019 N.Y. AB 5622.

But such a transfer between Zhang and Apex never occurred.  And so, unsurprisingly, the SAP fails to plausibly allege facts showing a transfer of the artwork from Zhang to Apex.  To start, the SAP fails to plausibly allege facts showing that Zhang ever owned the artwork, so it cannot plausibly allege that Zhang ever transferred the artwork.  In fact, the SAP's factual allegations and so-called supporting documents contradict the SAP's conclusory and implausible allegations that Zhang owns or owned the artwork.  *See Comfort Inn Oceanside v. Hertz Corp.,* No. 11-CV-1534 (JG) (JMA), 2011 U.S. Dist. LEXIS 126294, at *12-15 (E.D.N.Y. Nov. 1, 2011) (concluding that party failed to state a claim because its claim is "not supported by plausible allegations and is contradicted by the very materials it has asked [the Court] to consider in connection with this motion").

That Zhang never owned the artwork is evident from the SAP's own allegations and the accompanying documents. To begin with, Petitioners' Exhibit 11—the May 19 invoice from Christie's to "Anon 9"—states that "[t]itle to property identified on this invoice shall not pass to buyer until Christie's has collected payment in full from the buyer."  Yet the SAP alleges no facts showing that "Anon 9" or Zhang herself made payments and took title to the artwork before Christie's amended its documentation to reflect Apex as the buyer.[5]  Notwithstanding these allegations, the SAP alleges that, by June 11, Apex was the buyer of record at Christie's and that Wang Xiaofei, Apex's sole director and shareholder at the time, wired full payment for the artwork to Christie's in three installments dated June 16, August 8, and September 30.  SAP ¶¶ 52 ,54(i), (iii), (v); *see also* Feigenbaum Decl. Ex. 13 (identifying Wang as sole shareholder

---

[5] The SAP repeatedly characterizes Christie's changing their paperwork from "Anon 9" to Apex as the buyer as some sort of sinister "manipulation" of the documents.  *See, e.g.*, SAP ¶ 55. It was no such thing.  Apex was always the intended buyer and owner of the artwork, but was not yet incorporated at the time of the auction.

and director of Apex); Ex. 17 (June 11 invoice to Apex from Christie's); 21 (June 16 payment by

Wang Xiaofei to Christie's); Ex. 24 (August 8 payment by Wang Xiaofei to Christie's); Ex. 27

(September 30 payment by Wang Xiaofei to Christie's). Thus, as a matter of both fact and law,

the allegations in the SAP do not and cannot support the conclusory claim that Zhang owns or

owned the artwork or had any title to the artwork to fraudulently convey.  Rather, the allegations

and the documents that Petitioners have put before this Court demonstrate that Apex owns the

artwork and obtained title to the artwork via Christie's—not from Zhang.[6]  The SAP is

accordingly futile as to the fraudulent conveyance claims.  *See Comfort Inn Oceanside*, 2011

U.S. Dist. LEXIS 126294, at *12-15.

        Any conclusory allegations that Zhang is or was in *de facto* control of the artwork do not

establish that Zhang—the alleged judgment debtor and the relevant transferor in any fraudulent

conveyance claim—ever owned the artwork to fraudulently convey to Apex.  While such

allegations could potentially support an alter ego theory of ownership, Petitioners appear to have

abandoned their alter ego theory in favor of the SAP's fraudulent conveyance theory. Indeed, the

SAP does not ask this Court to pierce any corporate veil—likely because such an analysis would

not favor Petitioners, as it would require multiple levels of veil-piercing governed by the laws of

the jurisdictions where each entity is respectively incorporated.  *See, e.g.*, *Tronox Inc. v. Kerr-

McGee Corp. (In re Tronox Inc.),* 855 F.3d 84, 106 n.27 (2d Cir. 2017) (noting that plaintiffs

_____

[6] The SAP falsely asserts that Wang does not collect artwork in an apparent effort to bolster
Petitioners' claim that the artwork belongs to Zhang, *see, e.g.*, SAP ¶ 55, when a simple Google
search would have revealed not only that Wang personally collects artwork, but that he
specifically collects Andy Warhol paintings like the artwork at issue. *See* Ken Baron, *Originals:
Wang Xiaofei*, Design Hotels, *available at* https://www.designhotels.com/culture/originals/wang-
xiaofei ("I personally collect work by artists such as Andy Warhol and Liu Xiaodong.").

would have to establish a "chain of liability" and need veil piercings "at each level"); *Kalb,*
*Voorhis & Co. v. Am. Fin. Corp.,* 8 F.3d 130, 132-33 (2d Cir. 1993) (law of jurisdiction where
entity is incorporated applies to alter ego claims). In fact, the SAP's allegations significantly
weaken any alter ego theories Petitioners have previously suggested they may pursue. For
example, Petitioners have stripped the SAP of allegations that Zhang controls Apex. *See*
Feigenbaum Decl. Ex. 5, ¶¶ 36, 48, 58, 71 (redline of SAP showing allegations that Zhang
controls Apex have been deleted in numerous paragraphs) and do not plausibly allege that Zhang
controls Metro Joy Trust, the entity that owns Apex. Specifically, Petitioners base their
allegation that Zhang controls Metro Joy Trust on an offensive stereotype of Chinese culture that
she must control her adult son. *See* SAP ¶¶ 42(iv) ("Although Metro Joy Trust appears
ostensibly to be under Wang's control, it is in reality under Zhang's control, since Wang acts
solely as she instructs him to. Wang is, after all, Zhang's son and Tian Yibin's stepson, and
parent-child relationships in Chinse [*sic*] culture are traditionally hierarchical.").

Further, the apparent allegation that Zhang wired funds from her personal accounts to
Wang to buy the artwork is not only false and contradicted by Petitioners' own allegations and
supporting documentation, it still does not establish that Zhang ever owned the artwork herself.
Specifically, the SAP falsely alleges that "[o]n or about June 10, 2014, Zhang authorized a wire
transfer of $12,057,000 from her account at UBS AG to Wang's account at UBS AG, and the
transfer was confirmed on June 12, 2014." SAP ¶ 54(i).  The SAP makes similar and misleading
allegations regarding the two other transfers to Wang's account.  SAP ¶¶ 54(i), (iii), (v). Yet the
SAP itself is internally inconsistent: contradicting this allegation, the SAP also alleges that
Zhang "close[d] the UBS Account [in her name] in March 2014 with no balance remaining."
SAP ¶ 42(vi).

Despite Petitioners' misleading allegations, Petitioners' Exhibits 20, 23, and 26 show that these transfers to Wang did not come from "her account" or even an "account at UBS AG." Rather, each of these transfers came from the Credit Suisse AG account in Singapore in the name of SETL. *See* Feigenbaum Decl. Exs. 20, 23, 26.  In other words, Zhang did not even control the funds that were transferred to Wang to pay for the artwork. There can be no dispute that Petitioners are aware of the SETL account, since it is mentioned and defined in the SAP as the "SETL CS Account."  SAP ¶ 42(ii).  It therefore is unlikely that Petitioners simply made a mistake when they alleged in the SAP that the transfer came "from her account at UBS AG." SAP ¶ 54(i).  More likely, Petitioners have knowingly advanced a misleading narrative in order to avoid a statute of limitations and the other defects in their claims.

Additionally, as set forth above, the SAP's allegation that that Zhang "indirectly" purchased the artwork merely highlights the fact that the SAP focuses on the wrong "transfer"[7] for its fraudulent conveyance claim.  *See* SAP ¶ 55.  As the *Universitas* case relied on so heavily by Petitioners demonstrates, it is the "original transfer away from the control of the judgment debtor"—not subsequent transfers—that ultimately matters in a fraudulent conveyance analysis. *Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 U.S. Dist. LEXIS 165803, at *28 (S.D.N.Y. Nov. 20, 2013).  Accordingly, depending on how the word "control" in *Universitas* is interpreted, the relevant transfer under the SAP's allegations would be either (1) when Zhang— the alleged judgment debtor—transferred funds out of her name from her personal accounts in March 2014 to the SETL Accounts based in Singapore, *see* SAP ¶¶ 42(vi–vii), or (2) when SETL

---

[7] "Transfer" here is used as shorthand for the alleged transfer of the artwork from Zhang to Apex. As stated above, however, no such transfer occurred and the SAP fails to plausibly plead allegations that such a transfer occurred.

transferred funds out the SETL CS Account—which the SAP alleges Zhang controls, *see* SAP

¶ 42(xiii)—to Wang in June, August, and September 2014, *see* SAP ¶¶ 54 (i), (iii), (v).  Either

way, however, for the purpose of assessing a fraudulent transfer claim, the relevant transfer

could not be the alleged transfer of funds from Wang to Christie's for the artwork, as Zhang

cannot be plausibly said to "control" her adult son, despite the SAP's reliance on offensive

stereotypes.  *See* SAP ¶¶ 42(iv).  Nor could the relevant transfer be Zhang's purported transfer of

the artwork to Apex because, as set forth above, there was no such transfer and there are no non-

conclusory allegations demonstrating otherwise.

       Identifying the correct transfer is not a meaningless or semantic exercise.  The nature and

timing of the transfer determines how, when, and which statute of limitations applies.  As

explained below, fraudulent conveyance claims based on any of the potentially relevant transfers

would be barred by any statute of limitations because it has been more than six years since those

transfers and Petitioners have known about those transfers for so long that they cannot benefit

from a discovery rule under two years.

       Finally, *Universitas* is also factually inapposite.  In *Universitas*, the petitioner was the

sole beneficiary of proceeds payable from two life insurance policies held by a Trust.  When the

subject of the life insurance policies passed away, the Corporate Trustee of the Trust received the

proceeds from the policies and denied the Petitioner's timely and valid claim for the proceeds.

Even after a judgment was entered finding that Petitioner was entitled to the proceeds, the

Corporate Trustee deliberately transferred the proceeds to and through numerous entities and

properties controlled by the Chairman of the Corporate Trustee. Those entities, as well as the

Corporate Trustee, then "resisted all efforts to enforce the judgment and . . . failed to disclose the

current location of the proceeds of the insurance policies."  *Universitas,* 2013 U.S. Dist. LEXIS

165803, at *8. *Universitas*, in other words, involved the bald theft of life insurance proceeds to which the Corporate Trustee and its Chairman never had a legitimate claim, and the deliberate hiding of those proceeds to frustrate enforcement of an already entered judgment.

That is far from the case alleged here. In the SAP, all of the alleged transfers occurred nearly a year before Petitioners made ***any*** allegations against Zhang or commenced arbitrations against Zhang. *See* SAP ¶ 25. And none of the alleged transfers involved funds to which Petitioners had any claim at the time of the transfers.

In sum, the SAP fails to plausibly allege facts showing a transfer of the artwork between Zhang and Apex. Further, the SAP fails to identify the correct transfer for the purpose of a fraudulent conveyance analysis almost certainly because (1) any transfers away from Zhang would not involve the artwork at issue here, and (2) a claim based on the legally-relevant transfer would be indisputably barred by the statute of limitations regardless of the applicable law. The SAP's failure to plausibly allege a fraudulent transfer that would pass muster under Rule 8 is all the more problematic as actual fraud claims are subject to the higher pleading standard of Rule 9(b). *See* Fed R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"). For these additional reasons, granting leave to amend to add "fraudulent conveyance principles" would be futile.

### C.   The SAP Fails to Plausibly Allege or Allege with Sufficient Particularity Facts Supporting Turnover of the Artwork under CPLR § 5225(b).

Petitioners argue that "even if the fraudulent conveyance allegations were invalid . . . , the SAP's only claim, for confirmation of the Attachment Order, would remain valid because it continues to allege that Zhang, not Apex, owns, controls and otherwise has an interest in the Artworks under CPLR § 5225(b)." Pet. Memo. at 3.

15

Contrary to Petitioners' argument, however, the SAP does not plausibly allege facts supporting turnover under CPLR § 5225(b).  Under CPLR § 5225(b), turnover is only appropriate (1) "against a person in possession or custody of money or other personal property in which the judgment debtor has an interest," or (2) "against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee."  Here, for the reasons already stated above, the SAP does not plausibly allege (1) that Zhang presently has—or has ever had—any recognizable property interest in the artwork, or (2) that Apex "is a transferee of money or other personal property ***from the judgment debtor***."  CPLR § 5225(b) (emphasis added); *see also Ladjevardian v. Republic of Argentina*, No. 06-cv-3276 (TPG), 2016 U.S. Dist. LEXIS 69348, at *9 (S.D.N.Y. May 26, 2016) (holding that turnover was inappropriate under CPLR § 5225(b) after funds were irrevocably transferred). The SAP's allegations and supporting documents instead yield only one conclusion: that Apex is a transferee of the artwork via Christie's. And even if the SAP had sufficiently alleged that Apex was a transferee of money or other property from Zhang, the SAP does not allege any facts suggesting that Zhang is "entitled" to the possession of the artwork from Apex. As noted above, Petitioners no longer even allege that Zhang controls Apex. *See* Feigenbaum Decl. Ex. 5, ¶¶ 36, 48, 58, 71.  Nor does the SAP plausibly allege that Petitioners' rights to the artwork are superior to those of Apex because, again, the SAP does not ask this Court to pierce the veil of any corporate entity, let alone Apex. Granting leave to amend to add allegations purportedly supporting a § 5225(b) claim would accordingly be futile.

### D.     Petitioners Fail to Demonstrate that New York Law Applies.

Petitioners seemingly take for granted their assertion that New York law applies under the facts alleged in the SAP.  The facts giving rise to this case have nothing to do with New

York, which is why Petitioners go to such lengths in the SAP to highlight the fleeting connections to New York, while minimizing the connections to China, where all the relevant underlying transactions occurred.

First, none of the parties are incorporated in or reside in New York. Petitioners are Cayman Islands entities, Zhang is a resident of China, and Apex is incorporated in the Seychelles. SAP ¶¶ 10–14. In fact, even the entities alleged to be related to respondents are not alleged to be incorporated or organized in New York and were instead incorporated or organized in countries such as the Cook Islands and British Virgin Islands. SAP¶¶ 42(ii), (v), 57.[8] Second, the underlying dispute concerns the purchase of a restaurant chain in China by Petitioners. Third, none of the accounts alleged to be related to respondents are held in New York. SAP ¶¶ 42(ii), (vi), (xi). Finally, none of the legally relevant transfers occurred in New York—those transfers occurred in Asia.

It is therefore far from obvious that New York would supply the governing law for Petitioners' so-called fraudulent conveyance principles. In these circumstances, Petitioners "had the obligation to support their theory with an adequate choice of law analysis." *See Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 453 F. Supp. 2d 633, 688 (S.D.N.Y. 2006). Because they failed to do so, the Court should deny Petitioners' Motion for leave to amend. *Id.* (denying motion for leave to amend and "declin[ing] to investigate complex issues of foreign law" where plaintiffs assumed New York or federal common law applied to new theory, but the allegations suggested that the laws of Canada or Sudan might apply). Here, given that all the relevant

---

[8] Petitioners' inclusion of Metro Joy International LLC and Metro Joy Management LLC—two entities who have zero connection to this case—do not help their cause; if anything, their inclusion demonstrates the lack of legally-relevant connections to New York.

allegations concern events in China, and the alleged transfers were alleged to have been made by, or sent to, an individual residing in China, to the extent that the Court permits Petitioners to amend the FAP, any claims for or based in "principles of fraudulent conveyance law" should be governed by Chinese law.

### E.    Petitioners' Fraudulent Conveyance Claims are Time-Barred

Even assuming for the sake of argument that the SAP plausibly pleads a fraudulent transfer (it does not) and that New York law applies (it does not), Petitioners' fraudulent conveyance claims would *still* be barred by the statute of limitations. Under New York law, [9] "[a] claim based on actual fraud under DCL Section 276 must be brought within the later of six years from the date of the fraud or conveyance, or two years from the date that the fraud should have been discovered." *Liberty Co. v. Boyle*, 272 A.D.2d 380, 381 (2d Dep't 2000).  For constructive fraud claims, such as those made under DCL Section 275, the six-year statute of limitations applies, but the two-year discovery rule does not.  *In re Allou Distributors, Inc.*, 446 B.R. 32, 67 (Bankr. E.D.N.Y. 2011).

As stated above, the relevant transfer would be the "original transfer away from the control of the judgment debtor."  *Universitas Educ., LLC v. Nova Grp., Inc.,* 2013 U.S. Dist. LEXIS 165803, at *28 (S.D.N.Y. Nov. 20, 2013).  For the purposes of analyzing Petitioners' fraudulent transfer allegations, the relevant transfer could only be either (1) when Zhang—the alleged judgment debtor—transferred funds out of her personal accounts in March 2014 to the SETL Accounts based in Singapore, *see* SAP ¶¶ 42(vi–vii), or (2) when SETL transferred funds

---

[9] As stated above, this Opposition does not cite New York's current Uniform Voidable Transfer Act as it would not apply to the transfers alleged in this case.  But even if the UVTA were to apply to this case, Petitioners' claims would still be time-barred as the UVTA shortens the statute of limitations. *See* DCL § 278.

out the SETL CS Account—which the SAP alleges Zhang controls, *see* SAP ¶ 42(xiii)—to

Wang in June, August, and September 2014, *see* SAP ¶¶ 54 (i), (iii), (v).

It is indisputable that fraudulent conveyance claims based on any of these transfers, the

latest of which occurred in September 2014, are now time-barred. Any fraudulent conveyance

claims based on constructive fraud are time-barred because Petitioners were required to file their

claim no later than September 2020—six years after the transfer. *See In re Allou Distributors,*

*Inc.*, 446 B.R. at 67.  Neither the original petition nor the FAP in this action brought such claims,

and even with the SAP, Petitioners state that it "does not . . . assert a claim per se for fraudulent

conveyance." Pet. Memo. at 24.  Petitioners, moreover, did not originally allege any claims for

fraudulent conveyance in the confirmation proceedings before Judge Vyskocil, which they

initiated on April 13, 2021 and have now agreed to dismiss voluntarily. The first time Petitioners

made ***any*** fraudulent conveyance claims was when they filed their amended petition in the

confirmation proceedings on June 17, 2021—seven years after most of the relevant transfers

were made and well over six years since all of the relevant transfers were made.

Any fraudulent transfer claims based on actual fraud are barred because, not only has it

been more than six years since all of the relevant transfers, but Petitioners have actually known

about all of the relevant transfers since ***at least*** 2017. This is indisputable, and expressly set forth

in Petitioners' supporting documents.  Specifically, Exhibit 6 to the Feigenbaum Declaration is a

March 2017 affidavit submitted on behalf of Petitioners in the arbitration underlying this

proceeding. Paragraphs 42 through 51 of that affidavit detail, among other things, the 2014

transfers from Zhang's personal accounts to the SETL Accounts, and Paragraph 62 details the

transfers from the SETL Accounts to Wang.  In fact, the SAP itself cites to the March 2017

affidavit in making the allegations about the 2014 transfers. SAP ¶ 42. So even if we were to fix

the March 2017 date of the affidavit as the earliest date at which Petitioners learned of the

relevant transfers—and it is not the earliest date, as the March 2017 Affidavit makes clear, *see*

Feigenbaum Decl. Ex. 6 ¶¶ 42-51—the two-year discovery rule would not extend the six-year

statute of limitations, and any fraudulent conveyance claims based on actual fraud would be

time-barred.  *See Liberty Co.*, 272 A.D.2d at 381.

## IV.    Granting Leave to Amend Would Unduly Prejudice Apex

"Prejudice to the opposing party . . . has been described as the most important reason for

denying a motion to amend." *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe*, 34 F. Supp. 3d 311,

317 (S.D.N.Y. 2014) (quoting *Frenkel v. New York City Off-Track Betting Corp.*, 611 F. Supp.

2d 391, 394 (S.D.N.Y. 2009)).  An opposing party is unduly prejudiced when "the proposed

amendment would '(i) require the opponent to expend significant additional resources to conduct

discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii)

prevent the plaintiff from bringing a timely action in another jurisdiction.'" *Id.* (quoting

*Monahan v. New York City Department of Corrections*, 214 F.3d 275, 284 (2d Cir. 2000)).

Here, Apex would be unduly prejudiced by granting Petitioners' leave to amend.  First, as

Petitioners note, the additional allegations in the SAP stem from "Petitioners' own further factual

investigations."  Pet. Memo. at 2.  Apex is entitled to conduct its own discovery into Petitioners'

"own further factual investigations" as well as independently investigate the allegations for itself.

This will require Apex to expend significant additional resources, especially because ***Petitioners***

***still have not produced any documents in response to Apex's requested discovery based on the***

***allegations in the FAP***.  As a result, Apex will likely need to file a motion to compel Petitioners

to produce the underlying documents related to their allegations in the FAP (for which they have

not produced a single document), and Apex should not be dragged into another discovery fight.

Second, and relatedly, the need to conduct additional discovery will significantly delay the

resolution of this dispute.  This action was filed over 18 months ago, and the SAP will effectively renew the proceedings, based on new legal and factual theories, reopen discovery and further delay a resolution. None of this is necessary to resolve the issue before the Court: who is the rightful owner of the artwork, Apex or Zhang. The Court should accordingly deny leave to amend.

## **CONCLUSION**

For the foregoing reasons, the Court should deny leave to amend.


Dated: August 6, 2021                                    DORSEY & WHITNEY LLP


By: */s/ Daniel P. Goldberger*

Daniel P. Goldberger
Joshua R. Kornfield
DORSEY & WHITNEY LLP
51 West 52nd Street
New York, New York 10019
(212) 415-9200
goldberger.dan@dorsey.com
kornfield.joshua@dorsey.com

*Attorneys for Intervenor-Respondent Apex Lead Investment Holdings Limited*