**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

LA DOLCE VITA FINE DINING COMPANY
LIMITED and LA DOLCE VITA FINE DINING
GROUP HOLDINGS LIMITED,

                Petitioners,

       - v. -

ZHANG LAN,

                Respondent,

       - and –

APEX LEAD INVESTMENT HOLDINGS
LIMITED,

                Intervenor-Respondent.

Case No.: 1:19-mc-00536-ALC

**ECF Case**

**Oral Argument Requested**

---

**MEMORANDUM OF LAW IN OPPOSITION TO PETITIONERS'**
**MOTION TO CONFIRM THE _EX PARTE_ ATTACHMENT ORDER**

## TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES** ........................................................................................... iii

**PRELIMINARY STATEMENT** .................................................................................... 1

**PROCEDURAL HISTORY** ........................................................................................... 2

    A.   The Attachment Proceeding ............................................................................ 2

    B.   The First Confirmation Proceeding ................................................................ 7

    C.   The Attachment Proceeding (*cont'd*) ............................................................ 8

    D.   The Second Confirmation Proceeding ........................................................... 9

    E.   The Attachment Proceeding (*cont'd*) .......................................................... 10

**LEGAL STANDARD** .................................................................................................. 11

**ARGUMENT** ............................................................................................................... 12

**I.    Petitioners Have Not Established That The Subject Paintings Belong To Zhang** ....... 12

    A.   Petitioners' Own Submissions Indicate That Apex Is The Owner Of The Subject Paintings ....................................................................................... 12

    B.   Petitioners Have Failed To Establish Ownership By Zhang ........................ 14

**II.   Petitioners' Motion To Confirm The *Ex Parte* Attachment Order Should Be Dismissed As Untimely** ........................................................................................ 17

**III.  The Jurisdictional Basis Of Petitioners' Action Is Dubious** ......................... 19

**IV.  Petitioners Have Not Satisfied The Statutory Requirements For Confirmation Of The *Ex Parte* Attachment Order** ..................................................................... 19

**V.   Petitioners' Fraudulent Conveyance Theory Is Meritless** ............................ 21

**CONCLUSION** ........................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                    **Page(s)**

*Banco Agricola y Pecuario v. Jiminez Export Corp.*,
    97 N.Y.S.2d 437 (N.Y. Sup. Ct. 1950) ...................................................................................14

*Bank of New York v. Norilsk Nickel*,
    14 A.D.3d 140 (1st Dep't 2004) .............................................................................................12

*Blue Axis Global Ltd. v. Alopex Advisors, LLC*,
    24-mc-508, 2025 WL 343500 (S.D.N.Y. Jan. 30, 2025) ........................................................11

*BSH Hausgeräte GmbH v. Kamhi*,
    282 F.Supp.3d 668 (S.D.N.Y. 2017) ................................................................................20, 21

*Chaar v. Arab Bank P.L.C.*,
    651780/2002, 2022 WL 3340008 (N.Y. Sup. Ct. Aug. 10, 2022) ..........................................18

*Dayco Corp. v. Foreign Transactions Corp.*,
    705 F.2d 38 (2d Cir. 1983)......................................................................................................17

*E.T.I. Euro Telecom Int'l N.V. v. Republic of Bolivia*,
    08-cv-4247, 2008 WL 2940583 (S.D.N.Y. July 30, 2008)......................................................12

*Eisenberg v. Citation-Langley Corp.*,
    454 N.Y.S.2d 627 (N.Y. Sup. Ct. 1982) .................................................................................17

*Faberge Int'l, Inc. v. Di Pino*,
    109 A.D.2d 235 (1st Dep't 1985) ...........................................................................................11

*Fratelli Italiani, LLC v. Mironova*,
    18-cv-7103, 2019 WL 3759160 (S.D.N.Y. Apr. 11, 2019)......................................................11

*George Moundreas & Co.., S.A. v. Jinhai Intelligent Mfg. Co. Ltd.*,
    20-cv-2626, 2021 WL 168930 (S.D.N.Y. Jan. 18, 2021).......................................................19

*Glencore AG v. Bharat Aluminum Co. Ltd.*,
    10-cv-5251, 2010 WL 4323264 (S.D.N.Y. Nov. 1, 2010) ................................................19, 23

*Harbour Victoria Inv. Holdings Ltd. v. Chawla*,
    15-cv-03212 (S.D.N.Y. May 15, 2015) ..............................................................................14, 19

*Iraq Telecom Ltd. v. IBL Bank S.A.L.*,
    43 F. 4th 263 (2d Cir. 2022) ...................................................................................................20

*Krineta Enters. Co. Ltd. v. Lavidas*,
    22 N.Y.S.3d 137 (N.Y. Sup. Ct., N.Y. Cnty. 2015) ...............................................................20

*Musket Corp. v. PDVSA Petroleo, S.A.*,
    512 F. Supp. 2d 155 (S.D.N.Y. 2007)..................................................................12

*N.Y. Janitorial Serv., Inc. v. Easthampton Dewitt Corp.*,
    420 N.Y.S. 2d 100 (N.Y. Sup. Ct. Onondaga Cnty. 1979).....................................17

*Posadas de Puerto Rico, Inc. v. Gruberman*,
    641 N.Y.S.2d 615 (1st Dep't 1996) .................................................................17, 18

*Ray v. Ray*,
    799 F. App'x 29 (2d Cir. 2020) ...........................................................................22

*Roche Diagnostics GmbH v. Enzo Biochem, Inc.*,
    992 F. Supp. 2d 213 (S.D.N.Y. 2013)..................................................................16

*Swift Splash Ltd. v. Rice Corp.*,
    10-cv-6448, 2010 WL 3767131 (S.D.N.Y. Sept. 27, 2010) .....................11, 12, 20

*Worldwide Carriers Ltd. v. Aris S.S. Co.*,
    312 F. Supp. 172 (S.D.N.Y. 1970).......................................................................11

*Zapoteco v. Rapi, Inc.*,
    20-cv-6335, 2021 WL 1964548 (E.D.N.Y. May 17, 2021)..................................22

**Rules**

Fed. R. Civ. P. 15(a)(2)............................................................................................9

Fed. R. Civ. P. 64.................................................................................................11

N.Y. C.P.L.R. § 6211(a) .......................................................................................12

N.Y. C.P.L.R. § 6211(b) .......................................................................................17

N.Y. C.P.L.R. § 6212(a) ...........................................................................11, 14, 20

N.Y. C.P.L.R. § 7502(c) .............................................................................3, 19, 20

Zhang Lan ("Zhang" or "Respondent") respectfully submits this memorandum of law in opposition to the motion of La Dolce Vita Fine Dining Company Limited and La Dolce Vita Fine Dining Group Holdings Limited (together, "Petitioners") to confirm the *ex parte* order of attachment issued by this Court dated November 21, 2019 (the "*Ex Parte* Attachment Order").

## PRELIMINARY STATEMENT

Over five years ago, Petitioners filed suit in this Court, seeking the *ex parte* attachment of two paintings allegedly purchased by Zhang at an auction conducted years before by Christie's New York ("Christie's"). Petitioners' stated end-goal was to liquidate the paintings and apply the proceeds toward satisfaction of certain foreign arbitral awards entered against Zhang and others by the China International Economic and Trade Arbitration Commission ("CIETAC"). On November 21, 2019, this Court issued the requested *ex parte* attachment order, and Petitioners moved to confirm the order before the end of the month. But then things went off track. A non-party to the arbitration—Apex Lead Investment Holdings Limited ("Apex")—stepped forward to identify itself as the owner of the paintings, while Zhang herself disavowed ownership. These developments prompted Petitioners to ask that their motion to confirm the *ex parte* attachment order be deemed withdrawn. In the years that followed, Petitioners pursued discovery into the ownership of the paintings, filed one amended petition and then another, and launched two separate, successive actions for confirmation of the underlying foreign arbitral awards.

As a result of these procedural maneuvers and false starts, the renewal of Petitioners' motion to confirm was postponed for months and then years. The resulting delay has been extraordinary: Under New York law, *ex parte* attachment is intended as a brief stopgap, to be followed promptly—in a matter of days—by a motion to confirm. But the motion at issue here was filed after a period of *over five years*. New York's attachment law does not contemplate that

an *ex parte* attachment may be sustained indefinitely in this way, for years on end, until the petitioner deems the time opportune to move for confirmation. Petitioners' long-delayed motion to confirm the *ex parte* attachment order should be denied on that basis alone.

This is not the only defect in Petitioners' motion. Attachment must be premised on ownership, and Petitioners have failed to establish that Zhang, rather than Apex, is the owner of the paintings. To the contrary, Petitioners' own proffered evidence confirms that Apex is the owner: Apex was billed for the paintings, Apex paid for the paintings, Apex sought possession of the paintings, and Apex was confirmed as the owner of the paintings by Christie's itself. Petitioners have also not satisfied the statutory prerequisites for confirmation of an *ex parte* attachment order, among other things because they have not demonstrated a likelihood of success in their pending action to confirm the underlying foreign arbitral awards, nor have they established that attachment of the paintings is necessary to give effect to those awards. As set forth in further detail below, Petitioners' motion should be denied in full.

## PROCEDURAL HISTORY

### A.    The Attachment Proceeding

On or about November 18, 2019, Petitioners commenced this action (the "Attachment Proceeding") against Zhang and two co-respondents, seeking the *ex parte* attachment of "[a]rtworks and other assets" allegedly "owned by Zhang" and believed to be in the possession of Christie's.[1] Petitioners singled out in particular two paintings allegedly purchased by Zhang

---

[1] *See* Pet. for *Ex Parte* Order of Attach. in Aid of Arbs. (the "Petition" or "Pet.") ¶¶ 4, 44, ECF No. 9, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Dec. 2, 2019). The two other respondents—Grand Lan Holdings Group (BVI) Limited ("GL Holdings") and Qiao Jiang Lan Development Limited ("QJL Development")—are no longer parties to this action and were not named as respondents in Petitioners' most recently amended petition. *See* Second Am. Pet. for Order of Attach. in Aid of Arbs. ("Sec. Am. Pet.") ¶ 13, ECF No. 119, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Jan. 2, 2025) ("Although Grand Lan Holdings and Qiao Jiang Lan were originally named as respondents in this proceeding, they are not named as

at an auction conducted by Christie's in May 2014:  Andy Warhol's "Little Electric Chair"

(1965) and an untitled Martin Kippenberger (1988) (the "Subject Paintings").[2]  Petitioners

brought the proceeding pursuant to N.Y. C.P.L.R. § 7502(c), claiming that the Subject Paintings

were "among the few assets of which [they] are aware" that could be liquidated to help satisfy

arbitral awards issued in their favor against Zhang and others in proceedings then pending in

Beijing.[3]

### 1.    The *Ex Parte* Attachment Order

On November 21, 2019, this Court issued the requested *ex parte* order of attachment,

requiring that the Subject Paintings be "secured and restrained at Christie's . . . ."[4]  The Court

authorized Petitioners' then-counsel to serve the order on Christie's by overnight courier or

personal delivery, and the Court ordered Christie's to provide a garnishee's statement to

Petitioners' counsel within five days of such service.[5]  The Court additionally directed

Petitioners to "move, within five days after they have filed an affidavit of service confirming

service of this Order on Christie's, for an order confirming this Order of Attachment . . . ."[6]

---

respondents in this second amended petition because they themselves do not appear to have any ownership interest in the Artworks other than as presumed alter egos of Zhang.").

[2] *See* Pet. ¶¶ 4, 32-34, 44.  As alleged by Petitioners, the dispute that triggered the arbitration proceedings arose in connection with Petitioners' acquisition in 2013 of a majority stake in a "chain of restaurants in China" known as "South Beauty."  *See* Sec. Am. Pet. ¶ 2.

[3] *See* Pet. ¶¶ 1-4, 13, 39.

[4] *See* Order of Attach. at 2, ECF No. 20, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Dec. 2, 2019).

[5] *See id*. at 3-4.

[6] *See id*. at 4.

## 2.    The Emergence of Apex

The *ex parte* attachment order was served on Christie's in late November 2019, and
Petitioners followed up, on or about November 26, 2019, with a motion to confirm.[7]  Less than
one month later, however, a complication arose: in its garnishee's statement, dated December 13,
2019, Christie's indicated its "understanding and position" that a "non-party to the [Attachment
Proceeding] may have a title claim" to the Subject Paintings.[8]  Shortly thereafter, Apex came
forward to identify itself as the owner of the Subject Paintings.[9]

In light of these developments, Zhang recommended a "postponement of action" on
Petitioners' pending motion, and Petitioners advised the Court that their motion to confirm the *ex
parte* attachment order "should be held in abeyance until after the question of who owns or has
control over the [Subject Paintings] has been fleshed out in discovery."[10]  Petitioners
subsequently submitted a proposed order under which their then-pending motion would be

---

[7] *See* Aff. of Serv., ECF No. 21, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Dec. 2, 2019); Aff. of Serv., ECF No. 22, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Dec. 2, 2019); Notice of Mot. to Confirm Order of Attachment, ECF No. 23, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Dec. 2, 2019).

[8] *See* Decl. of Cosimo Borrelli in Support of Petitioners' Mot. to Confirm the Court's Order of Attach. ("Borrelli Decl.") ¶ 15, ECF No.126, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Feb. 7, 2025); *see also id.*, Ex. 9 (Garnishee's Statement).

[9] *See* Sec. Am. Pet. ¶ 4 ("Apex first emerged on December 31, 2019 . . . ."); *see also* Memorandum of Law in Support of Petitioners' Motion to Confirm the Court's Order of Attachment ("Pet. Br.") at 14, ECF No. 125, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Feb. 7, 2025) ("Petitioners learned of Apex's existence on December 31, 2019, after the Artworks were attached."); Letter at 2, ECF No. 30, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Jan. 8, 2020) (describing Apex as "ostensible owner of the Artworks"); Letter at 1, ECF No. 31, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Jan. 24, 2020) (stating that Apex "emerged out of the blue claiming that it is the owner of the Artworks . . . .").

[10] *See* Letter at 2, ECF No. 29, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, No. 19-mc-00536 (S.D.N.Y. Jan. 6, 2020); Letter at 2, ECF No. 30, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, No. 19-mc-00536 (S.D.N.Y. Jan. 8, 2020).

"deemed withdrawn, without prejudice, while discovery goes forward," to be "re-file[d] . . . within 21 days after the completion of discovery . . . ."[11]

### 3.     The Motion to Dismiss & Vacate

On March 10, 2020, Zhang and her co-respondents moved for vacatur of the *ex parte* attachment order and dismissal of the Attachment Proceeding, among other things for lack of valid service and lack of jurisdiction.[12]  In October 2020, while the motion for vacatur and dismissal was still pending, Petitioners requested leave of the Court to proceed with discovery on Apex.[13]  Petitioners indicated that such discovery would be limited, "at least for now," to a "subpoena for documents bearing on the issue of who actually owns or controls the artworks . . . ."[14]

On December 11, 2020, this Court denied Zhang's motion for vacatur and dismissal.[15] The Court granted Petitioners leave to serve Zhang by email through her New York counsel and declined to consider the jurisdictional issues raised pending "discovery on the ownership of the Subject Paintings."[16]

---

[11] *See* Letter at 3, ECF No. 31, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Jan. 24, 2020); *see also* [Proposed] Order ¶¶ 2, 10, ECF No. 32, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Jan. 24, 2020).

[12] *See* Notice of Mot. to Dismiss Action & Vacate Order of Attach., ECF No. 57, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Mar. 10, 2020); Mem. of Law in Support of Respondents' Mot. to Dismiss Action & Vacate Order of Attach., ECF No. 58, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Mar. 10, 2020).

[13] *See* Letter at 1-2, ECF No. 67, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Oct. 1, 2020); *see also La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536, 2020 WL 7321366, at *2 (S.D.N.Y. Dec. 11, 2020).

[14] *See* Letter at 1-2, ECF No. 67, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Oct. 1, 2020).

[15] *See Zhang*, 2020 WL 7321366, at *1, *6.

[16] *See id.* at *6 ("[T]he resolution of the ownership question will bear on whether the Court has *in rem* jurisdiction, and over whom . . . .").

### 4.    Petitioners' Motion to Confirm the Arbitral Awards

On or about December 21, 2020, Petitioners served document requests on Apex, Zhang, and Zhang's two co-respondents, GL Holdings and QJL Development.[17]  Just over a week later, on December 31, 2020, Petitioners filed an amended petition adding Apex as an intervenor-respondent.[18]  Petitioners explained that Apex had been named as an "intervening party" in order to "resolve the question of who . . . has actual control over the artworks and is their *de facto* owner."[19]  That question, Petitioners continued, was to be "resolved in the context of Petitioners' eventual motion to confirm the Attachment Order . . . ."[20]  Petitioners urged the Court to keep the *ex parte* attachment order "in place until after Petitioners' eventual new motion to confirm the Attachment Order or motion for the turnover of the Artworks has been resolved . . . ."[21]

Months passed, however, without renewal of Petitioners' motion to confirm the *ex parte* attachment order.  Instead, in April 2021, Petitioners moved this Court for confirmation of the two foreign arbitral awards that had been issued against Zhang, GL Holdings, and/or QJL Development in China (the "Arbitral Awards").[22]  The Court struck the motion, explaining that it did not "fit into any of the miscellaneous categories," and advised Petitioners that if they wished

---

[17] *See* Joint Status Letter at 1, ECF No. 90, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. July 1, 2021).  Apex made "rolling document production[s]."  *See id.* at 2.

[18] *See* Am. Pet. for Order of Attach. in Aid of Arbs. ("First Amended Petition" or "Am. Pet."), ECF No. 74, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Dec. 31, 2020).

[19] *See id.* ¶¶ 1, 6.

[20] *See id.* ¶ 6.

[21] *See id.* ¶¶ 6, 53-54.  Petitioners referred repeatedly in the amended petition to their "eventual new motion to confirm" the *ex parte* attachment order.  *See id.* ¶¶ 41, 47, 53-54.

[22] *See* Notice of Mot. to Confirm Foreign Arb. Awards and for Entry of Judgment, ECF No. 76, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Apr. 5, 2021); *see also* Borrelli Decl., Ex. 3 (CIETAC Beijing Partial Award No. 0591), Ex. 4 (CIETAC Beijing Partial Award No. 0592).

to move for confirmation of the foreign arbitral awards, they should "open a civil matter, pay the requisite filing fee, and file the motion in that civil matter."[23]

### B.    The First Confirmation Proceeding

In accordance with this Court's guidance, Petitioners initiated a new civil proceeding (the "First Confirmation Proceeding") seeking confirmation of the Arbitral Awards, which was assigned to the Hon. Mary K. Vyskocil.[24]  In that proceeding, Petitioners sought leave from Judge Vyskocil to file what they described as an "omnibus motion" for (1) confirmation of this Court's *ex parte* attachment order, (2) confirmation of the Arbitral Awards, and (3) turnover of the Subject Paintings.[25]  Petitioners explained that while they had originally "intended to move" in May 2021 for confirmation of the *ex parte* attachment order in this Court, they believed that their proposed "omnibus" approach would "streamline the resolution" of the dispute by enabling Judge Vyskocil to grant "relief that is all intertwined."[26]  Judge Vyskocil rejected the proposal, explaining at a June 8, 2021 conference that confirmation of this Court's *ex parte* attachment order should be sought in this Court.[27]  Three days later, Petitioners advised Judge Vyskocil that they would "next week be asking Judge Carter for leave to file" a motion to confirm the *ex parte* attachment order.[28]

---

[23] *See* Order, ECF No. 81, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Apr. 7, 2021).

[24] *See* Fisher Decl., Ex. B (Pet. to Confirm Foreign Arb. Awards and for Entry of Judgment, ECF No. 1, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 21-cv-03178 (S.D.N.Y. Apr. 13, 2021)).

[25] *See* Fisher Decl., Ex. C (Letter at 3, ECF No. 27, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 21-cv-03178 (S.D.N.Y. May 4, 2021)).

[26] *See id*.

[27] *See* Fisher Decl., Ex. D (Letter at 1, ECF No. 39, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 21-cv-03178 (S.D.N.Y. June 11, 2021)).

[28] *See id.*  Five days later, on June 16, 2021, this Court ordered the parties in this action to "submit a joint report on the status of discovery."  *See* Order, ECF No. 82, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. June 16, 2021).

Judge Vyskocil also directed Petitioners to file a revised motion for confirmation of the Arbitral Awards "no later than June 15, 2021," but Petitioners maintained that any such motion "should be deferred pending Judge Carter's decision on a motion . . . to confirm the [*ex parte*] attachment order."[29]  However, Judge Vyskocil declined to leave the case before her "open but inactive" while Petitioners litigated the Attachment Proceeding and  "strongly advised" Petitioners that if they were "not prepared to move forward" with confirmation of the Arbitral Awards in her Court, they should "confer with Respondents about voluntarily dismissing the action without prejudice . . . ."[30]  The parties to the Confirmation Proceeding thereafter entered into a stipulation of voluntary dismissal which was so-ordered by Judge Vyskocil on August 6, 2021.[31]

## C.    The Attachment Proceeding (*cont'd*)

Back in this Court, Petitioners announced on June 24, 2021 that the time had "become ripe" to move for confirmation of the *ex parte* attachment order.[32]  But Petitioners did not seek to bring such a motion right away.  Instead, Petitioners asked that they be permitted to file a *second* amended petition, explaining that they "wish[ed] to conform their petition with the current record" by "incorporat[ing] additional pertinent evidence" into the pleading.[33]  The Court

---

[29] *See* Fisher Decl., Ex. E (Post-Conf. Scheduling Order, ECF No. 36, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 21-cv-03178 (S.D.N.Y. June 8, 2021)); *id.*, Ex. D (Letter at 2, ECF No. 39, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 21-cv-03178 (S.D.N.Y. June 11, 2021)).

[30] *See* Fisher Decl., Ex. F (Order at 1, ECF No. 42, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 21-cv-03178 (S.D.N.Y. July 26, 2021)).

[31] *See* Fisher Decl., Ex. G (Stipulation & Order of Voluntary Dismissal Without Prejudice, ECF No. 46, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 21-cv-03178 (Aug. 6, 2021)); *see also id.* Ex. H (Letter, ECF No. 44, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, No. 21-cv-03178 (S.D.N.Y. Aug. 6, 2021)).

[32] *See* Pre-Mot. Conf. Letter at 1-2, ECF No. 87, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. June 24, 2021).

[33] *See id.* at 2-3 ("Petitioners hereby request leave to file the second amended petition before they file the requested Confirmation Motion.").  The proposed amendments to the petition included the removal of GL Holdings and QJL Development as respondents and the addition of allegations that the Subject Paintings had been fraudulently

granted Petitioners leave to move to amend their attachment petition but deferred resolution of their request to move for confirmation of the *ex parte* attachment order "until the motion to amend is decided."[34]

Petitioners filed their motion to amend the attachment petition on July 20, 2021, noting that this latest round of amendments was intended to "advance the outcome of this proceeding on the merits by bringing up to date an otherwise stale pleading . . . ."[35]  The motion was opposed by Apex, Zhang, and Zhang's co-respondents.[36]

### D.    The Second Confirmation Proceeding

On or about July 20, 2023, while Petitioners' motion to amend the attachment petition was pending in this action, Petitioners commenced yet another proceeding seeking to confirm the Arbitral Awards (the "Second Confirmation Proceeding").[37]  The Second Confirmation Proceeding was originally assigned to the Hon. Edgardo Ramos but was reassigned to this Court in or about November 2023.[38]  In February 2024, Zhang and Apex moved separately for

---

conveyed to Apex.  *See id.* at 2; *see also* Second Am. Pet. for Order of Attachment in Aid of Arbs., ECF No. 87-1, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. June 24, 2021); *see also id.* ¶ 13 (explaining that GL Holdings and QJL Development were "not named as respondents in this second amended petition").

[34] *See* Order, ECF No. 92, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. July 9, 2021).

[35] *See* Notice of Mot. under Rule 15(a)(2) for Leave to File Second Am. Pet., ECF No. 95, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. July 20, 2021); Petitioners' Mem. of Law in Support of Their Mot. under Fed. R. Civ. P. 15(a)(2) for Leave to File Second Am. Pet. 1, ECF No. 96, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. July 20, 2021).

[36] *See* Mem. of Law in Opp. to Petitioners' Mot. for Leave to File Second Am. Pet., ECF No. 98, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Aug. 6, 2021); Intervenor-Respondent's Mem. of Law in Opp. to Petitioners' Mot. for Leave to File Second Am. Pet., ECF No. 99, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Aug. 6, 2021).

[37] *See* Fisher Decl., Ex. I (Pet. to Confirm & Enforce Foreign Arb. Awards, ECF No. 1, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 23-cv-06273 (S.D.N.Y. July 20, 2023)); *see also id.*, Ex. J (Response to Pre-Motion Conference Letter at 3, ECF No. 24, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 23-cv-06273 (S.D.N.Y. Sept. 28, 2023) ("Petitioners do not seek to have the [*ex parte* attachment order] confirmed in this proceeding . . . .").

[38] *See* Fisher Decl., Ex. K (Letter, ECF No. 31, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 23-cv-06273 (S.D.N.Y. Nov. 29, 2023)).

dismissal of the Second Confirmation Proceeding, arguing, among other things, that personal

and/or *quasi in rem* jurisdiction was lacking.[39]  Those motions remain pending.

### E.    The Attachment Proceeding (*cont'd*)

On November 15, 2024, this Court directed the parties to submit a joint status report

"providing details on how [they] would like to proceed" in both the Attachment Proceeding and

the Second Confirmation Proceeding.[40]  By letter dated December 3, 2024, the parties advised

the Court that a compromise had been reached permitting Petitioners to file, without objection, a

modified version of their proposed second amended attachment petition, without prejudice to the

rights of Apex or Zhang to "oppose the Second Amended Petition and any motion to confirm the

ex parte attachment on any appropriate legal or factual ground."[41]  Pursuant to the stipulation

between the parties, the Second Amended Petition for an Order of Attachment in Aid of

Arbitrations was filed in the Attachment Proceeding, with the agreed-upon modifications, on

January 2, 2025.[42]

Two weeks later, on January 16, 2025—over five years after commencing this

proceeding and over three years after announcing that the time was "ripe"—Petitioners filed a

---

[39] *See* Fisher Decl., Ex. L (Apex Lead Investment Holdings Limited's Notice of Mot. to Dismiss Pet., ECF No. 35, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 23-cv-06273 (S.D.N.Y. Feb. 27, 2024)); *id.,* Ex. M (Apex Lead Investment Holdings Limited's Mem. of Law in Support of Mot. to Dismiss, ECF No. 36, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 23-cv-06273 (S.D.N.Y. Feb. 27, 2024)); *id.,* Ex. N (Notice of Mot. to Dismiss, ECF No. 37, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 23-cv-06273 (S.D.N.Y. Feb. 27, 2024)); *id.,* Ex. O (Mem. of Law in Support of Mot. to Dismiss Pet. to Confirm & Enforce Foreign Arb. Awards, ECF No. 38, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 23-cv-06273 (S.D.N.Y. Feb. 27, 2024)); *id.,* Ex. P (Apex Lead Investment Holdings Limited's Reply in Support of Motion to Dismiss, ECF No. 43, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 23-cv-06273 (S.D.N.Y. Mar. 26, 2024)); *id.,* Ex. Q (Reply Mem. of Law in Further Support of Pet. to Confirm & Enforce Foreign Arb. Awards, ECF No. 44, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 23-cv-06273 (S.D.N.Y. Mar. 26, 2024)).

[40] *See* Order, ECF No. 115, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Nov. 15, 2024).

[41] *See* Joint Status Report at 1-2, ECF No. 116, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Dec. 3, 2024); *see also* Stipulation & Order, ECF No. 118, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Dec. 27, 2024).

[42] *See* Sec. Am. Pet.

premotion conference letter seeking leave to move for confirmation of the *ex parte* attachment order.[43]  Later that day, this Court granted Petitioners the requested leave.[44]

## LEGAL STANDARD

New York state law applies to this proceeding by operation of Fed. R. Civ. P. 64, which makes attachment available in a federal action pursuant to the "law of the state where the court is located."  Fed. R. Civ. P. 64(a); *see also Blue Axis Global Ltd. v. Alopex Advisors, LLC*, 24-mc-508, 2025 WL 343500, at *2 (S.D.N.Y. Jan. 30, 2025); *Swift Splash Ltd. v. Rice Corp.*, 10-cv-6448, 2010 WL 3767131, at *2 (S.D.N.Y. Sept. 27, 2010) ("New York law governs the availability of the provisional remedy of attachment in this Court.").

Under New York law, attachment is a "harsh" and "extraordinary" remedy, *see Fratelli Italiani, LLC v. Mironova*, 18-cv-7103, 2019 WL 3759160, at *7 (S.D.N.Y. Apr. 11, 2019) (citations and internal quotation marks omitted), and New York's attachment statutes are therefore "construed strictly against those who seek to invoke the remedy."  *Swift Splash*, 2010 WL 3767131, at *2 (internal quotation marks and citations omitted); *see also Faberge Int'l, Inc. v. Di Pino*, 109 A.D.2d 235, 239 (1st Dep't 1985) (characterizing attachment as a "drastic remedy"); *Worldwide Carriers Ltd. v. Aris S.S. Co.*, 312 F. Supp. 172, 177 (S.D.N.Y. 1970).  A party seeking attachment faces a "high burden," *see Fratelli Italiani*, 2019 WL 3759160, at *7, which may be satisfied only through a showing of "substantial written evidence."  *See Faberge*, 109 A.D.2d at 239 ("speculation and conjecture" insufficient); *see also* N.Y. C.P.L.R. 6212(a) (statutory requirements for attachment must be established by "affidavit and such other written evidence as may be submitted"); Siegel, N.Y. Prac. § 316 (6th ed.) ("[F]or an attachment, there

---

[43] *See* Pre-Mot. Conf. Letter, ECF No. 120, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Jan. 16, 2025).

[44] *See* Order, ECF No. 121, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Jan. 16, 2025).

must be evidentiary detail stronger than the summary and conclusory allegations that suffice today in a pleading.").  Attachment is indeed so "harsh and extraordinary" a remedy that a court may in some circumstances deny such relief even where a petitioner has met its "heavy burden." *See Swift Splash*, 2010 WL 3767131, at *2 (internal quotation marks and citations omitted); *see also Musket Corp. v. PDVSA Petroleo, S.A.*, 512 F. Supp. 2d 155, 160 (S.D.N.Y. 2007) ("Satisfaction of the statutory criteria . . . does not guarantee that a court will issue such a relief.").

## ARGUMENT

### I.    Petitioners Have Not Established That The Subject Paintings Belong To Zhang

As a threshold matter, Petitioners must establish that the property they seek to attach belongs to Zhang, for "attachment will only lie against the property of the debtor," and the "right to attach the property is only the same as the defendant's own interest in it."  *Bank of New York v. Norilsk Nickel*, 14 A.D.3d 140, 145 (1st Dep't 2004) (citation and internal quotation marks omitted); *see also* N.Y. C.P.L.R. § 6211(a) (providing for *ex parte* attachment of "property in which the defendant has an interest"); *E.T.I. Euro Telecom Int'l N.V. v. Republic of Bolivia*, 08-cv-4247, 2008 WL 2940583, at *2-3 (S.D.N.Y. July 30, 2008) (vacating *ex parte* attachment order where attached assets were owned by non-party to arbitration), *reconsideration denied*, 2008 WL 4129987 (S.D.N.Y. Sept. 4, 2008).  As set forth below, Petitioners have failed to make the necessary showing.

#### A.    Petitioners' Own Submissions Indicate That Apex Is The Owner Of The Subject Paintings

Petitioners bear the burden of establishing that Zhang has an attachable interest in the Subject Paintings, and Petitioners have not met that burden.  To the contrary, to the extent that

the documentary evidence supplied by Petitioners bears on the ownership issue at all, that
evidence confirms Apex as the owner of the Subject Paintings.

      *First*, the final invoice for the Subject Paintings was directed to Apex, the final payment
terms summary was directed to Apex, and the final buyer letter was directed to Apex. *See*
Borrelli Decl. ¶¶ 55-56; *id.* Ex. 39 at CHR_LDV_000078-81, Ex. 40 at CHR_LDV_000109.
That Christie's prepared drafts of payment documents initially directed to Zhang—prior to
learning that Apex would be making the purchase—does not invalidate the final versions of these
documents.

      *Second*, the purchase price was paid, according to Petitioners, from an account
maintained by Apex's then sole director and shareholder—Wang Xiaofei ("Wang"), Zhang's
son. *See* Borrelli Decl. ¶¶ 54, 57, 59, 62; *id.* Ex. 38 at CHR_LDV_000086, 88; *id.* Ex. 41 at
APEX000088; *id.* Ex. 43 at APEX0000157; *id.* Ex. 46 at APEX0000161; Pet. Br. 11-12, 23
(Apex's "sole shareholder and director was Zhang's son, Wang."). The invoice terms indicate,
moreover, that title to the Subject Paintings "shall not pass to the buyer until Christie's has
collected payment in full from the buyer," *see* Borrelli Decl., Ex. 39 at CHR_LDV_000078, and
Christie's subsequently confirmed in writing that Apex had in fact "paid in full for [its]
purchases" and was the "owner" of the Subject Paintings. *See id.* Ex. 45 at
CHR_LDV_000316.[45]

      *Third*, it was Apex and/or Wang—not Zhang—that sought possession of the Subject
Paintings after payment was rendered. On Petitioners' own telling, Christie's was engaged in
communications in March 2015 with respect to Wang and the "Storage / Release of Property," at

---

[45] *See also* Borrelli Decl., Ex. 34 (Fourth Affirmation of Zhang Lan ¶ 21, *La Dolce Vita Fine Dining Group Holdings Limited v. Zhang* (High Court of Hong Kong Mar. 8, 2015) (averring that purchaser and owner of Subject Paintings was a "third party company" in which Zhang had no "legal or beneficial interest")).

a time when Wang was Apex's sole director.  *See id.* ¶ 65; *id.* Ex. 48; Pet. Br. 12-13 (explaining

that "Wang Xiia-Fei" was a reference to Wang), 24 ("Sidley contacted Christie's to

discuss . . . *Wang's* . . . purported paintings." (emphasis in original)).[46]  Subsequently, counsel

for Apex reached out to Christie's to arrange for delivery and shipment.  *See* Borrelli Decl. ¶ 66;

*id.* Ex. 49 (email seeking to "arrange for the shipping" of the Subject Paintings, attaching

Purchaser Shipping Form); *id.* Ex. 53 at CHR_LDV_000685 (requesting "release [of] the

paintings to Apex as soon as possible").  The Subject Paintings have never been in Zhang's

possession, *see* Pet. Br. at 24 n.21, and Petitioners offer no evidence that Zhang has ever sought

possession of the Subject Paintings.

### B.    Petitioners Have Failed To Establish Ownership By Zhang

Against the weight of this evidence, Petitioners insist that Apex's ownership of the

Subject Paintings is an "utter sham" and that Zhang was the "true purchaser."  *See* Pet. Br. at 2,

10, 19.  But allegations alone cannot justify attachment, *see* N.Y. C.P.L.R. 6212(a), nor may

attachment be premised on "potentially intriguing questions" about a respondent's possible

"relationship to the entity that holds title" to the subject property.  *See* Fisher Decl. Ex. A

(Transcript 8:1-13, ECF No. 46, *Harbour Victoria Inv. Holdings Ltd. v. Chawla*, 15-cv-03212

(S.D.N.Y. May 15, 2015)).  What is needed is "proof of ownership or control," *see id.*, and such

proof is lacking here.

Proof advanced in support of attachment typically includes "at least one affidavit," and

each such affidavit "should be made by a person with first-hand knowledge of the facts sworn

to."  *See* Siegel, N.Y. Prac. § 316 (6th ed.); *see also Banco Agricola y Pecuario v. Jiminez*

---

[46] According to Petitioners, Wang remained sole director of Apex until March 1, 2016, when he was replaced by
Tian Yijin.  Sec. Am. Pet. ¶ 50.  Apparently based entirely on the similarity of the names, Petitioners speculate that
Tian Yijin is "related to, associated with, or acting as a front for" Tian *Yibin*, whom online reports have apparently
identified as Zhang's second husband.  *See* Pet. Br. at 13; *see also* Borrelli Decl. ¶ 69; *id.* Ex. 52.

*Export Corp.*, 97 N.Y.S.2d 437, 439-40 (N.Y. Sup. Ct. 1950) ("To sustain the attachment the affidavit in support thereof must contain evidence from which the court can determine that the ultimate facts stated can be substantiated . . . ."). Petitioners have furnished no such proof with respect to Zhang's alleged ownership of the Subject Paintings. Petitioners rely on the declaration of Cosimo Borrelli, a consultant with no first-hand knowledge pertinent to the ownership question and whose declaration draws largely, if not entirely, on a cherry-picked selection of documents submitted or produced in arbitration and court proceedings. *See* Borrelli Decl. ¶¶ 1, 5. Many of Borrelli's statements rest on nothing more than his own unsupported say-so.[47] Others rely on documents of questionable reliability—including decontextualized emails, uncertified and anonymous translations, and witness statements replete with hearsay.[48] Additionally, an unaccountably large proportion of the documents pertain to Manhattan apartments not at issue in this action at all.[49]

Petitioners' challenge to Apex's ownership rests ultimately on their theory that the money used to purchase the Subject Paintings may be traceable back to Zhang. According to Petitioners, payment for the Subject Paintings was made in three installments from a bank account maintained by Wang, and Petitioners allege in their pleadings that the funds used to make those payments were wired to Wang from an account maintained by Zhang at "UBS AG."

---

[47] The examples are too numerous to detail in full. Borrelli purports to summarize the findings of financial audits and investigations without providing the underlying reports, *see* Borrelli Decl. ¶¶ 8, 32, describes a funds transfer but provides no documentation, *see id.* ¶ 39, purports to paraphrase a statement allegedly made by Zhang to a court in Hong Kong but provides no citation, *see id.*, opines without citation that the Subject Paintings are the "only known remaining Zhang assets of substantial value," *see id.* ¶ 48, and purports somehow to know that "Tian Yijin"—Wang's alleged successor as director of Apex, *see* Sec. Am. Pet. ¶ 42(iii)—was "born in Daqing, China." *See* Borrelli Decl. ¶ 69.

[48] For uncertified and/or anonymous translations, *see* Borrelli Decl. Exs. 10, 13, and for hearsay, *see, e.g., id.* ¶¶ 25-26, 28, 30-31; *id.* Ex. 17; *id.* Ex. 19; *id.* Ex. 26. The "Witness Statement[s]" of Allen Jing Choung Han and Roy Kuan are also permeated with hearsay. *See id.* Exs. 15, 16. Borrelli also attaches two pages of unattributed financial analysis plucked from an exhibit to an affirmation filed in a different court. *See id.* ¶ 22; *id.* Ex. 14.

[49] *See* Borrelli Decl. Exs. 55-75.

*See* Sec. Am. Pet. ¶ 54.  The Borrelli Declaration and the attached documents tell a different story, apparently indicating transfers not from a UBS account held by Zhang, but from a Credit Suisse account held by a company called Success Elegant Trading Limited ("SETL").  *See* Borrelli Decl. ¶¶ 57, 59, 62 (referring to a "SETL CS" account); *id.* Ex. 41 at 1331; *id.* Ex. 43 at 1332; *id.* Ex. 46 at 1333; *see also* Pet. Br. at 2, 10-12 ("[E]ach payment originated from a SETL-titled account in Singapore . . . ."); Sec. Am. Pet. ¶ 42(ii) ("SETL holds an account in its own name with Credit Suisse AG Singapore . . . .").[50]  Petitioners would have the Court treat this SETL account as Zhang's own, but they have not provided the Court with an adequate evidentiary basis for doing so.  Indeed, while Petitioners claim that Zhang "incorporated" SETL in January 2014 and was its sole shareholder for some months thereafter, *see* Sec. Am. Pet. ¶ 42(ii); Pet. Br. at 2; Borrelli Decl. ¶ 41, they further allege that by the time of the purported transfers from SETL to Wang and from Wang to Christie's, ownership of SETL had been transferred in full to Asiatrust Limited ("Asiatrust"), a "professional trust company" that Petitioners do not allege was owned or controlled by Zhang.  *See* Sec. Am. Pet. ¶ 42(ii); Borrelli Decl. ¶ 41.[51]  Even supposing that Zhang did direct the transfers out of the SETL account, this would still not defeat Apex's claim to ownership, because whatever the source of the funds, the documentary evidence establishes that the Subject Paintings were bought and paid for by Apex (or by Wang as Apex's sole director and shareholder).[52]

---

[50] This discrepancy between the pleadings and the Borrelli Declaration exists even though the pleadings have been twice amended.  *See Roche Diagnostics GmbH v. Enzo Biochem, Inc.*, 992 F. Supp. 2d 213, 219 (S.D.N.Y. 2013) ("It is well settled that a party may not amend its pleadings in its briefing papers.").

[51] Petitioners allege that Asiatrust is the trustee of a trust that "includes" Apex and note that Apex's "original director" was Wang, but Petitioners do not allege that Asiatrust was owned or controlled by Wang.  *See* Sec. Am. Pet. ¶ 42(iii).

[52] Petitioners have submitted two decisions from two foreign courts reaching different conclusions regarding Zhang's alleged beneficial ownership of the SETL account.  The High Court of Hong Kong, applying a "beyond reasonable doubt" standard, found that it had not been established that Zhang retained a beneficial interest in SETL

## II.    Petitioners' Motion To Confirm The *Ex Parte* Attachment Order Should Be Dismissed As Untimely

As a matter of fundamental due process, the *ex parte* attachment of property must be followed in short order by a confirmation hearing.  *See Eisenberg v. Citation-Langley Corp.*, 454 N.Y.S.2d 627, 628-29 (N.Y. Sup. Ct. 1982), *aff'd*, 92 A.D.2d 795 (1st Dep't 1983).  A petitioner "must move to confirm an attachment order granted on an *ex parte* basis within five or ten days following the issuance of the order," *In re adidas AG*, 22-mc-320, 2023 WL 3687779, at *2 (S.D.N.Y. May 26, 2023), and failure to do so "invalidates the order of attachment."  *See Eisenberg*, 454 N.Y.S.2d at 627 ("After the issuance of an *ex parte* order of attachment, the CPLR provides that a prompt hearing must be held to determine the validity of the order of attachment."); *see also In re adidas AG*, 2023 WL 3687779, at *2 ("Pursuant to section 6211(b), [petitioner's] failure to file a motion to confirm nullifies the attachment order."); *N.Y. Janitorial Serv., Inc. v. Easthampton Dewitt Corp.*, 420 N.Y.S. 2d 100, 101 (N.Y. Sup. Ct. Onondaga Cnty. 1979) (attachment void absent timely filing of motion to confirm).

As the First Department explained, the New York State Legislature "clearly intended that attachment should be expeditiously pursued. . . ."  *See Posadas de Puerto Rico, Inc. v. Gruberman*, 641 N.Y.S.2d 615, 618 (1st Dep't 1996).  It was thus incumbent upon Petitioners to "move on notice . . . for an order confirming the attachment" and to do so promptly.  *See Dayco Corp. v. Foreign Transactions Corp.*, 705 F.2d 38, 38-39 (2d Cir. 1983); *see also* N.Y. C.P.L.R.

---

after the transfer of ownership to Asiatrust.  *See* Borrelli Decl., Ex. 31 (Judgment, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang* ¶ 78 [2018] HKCFI 548 (Mar. 14, 2018)).  The Court found evidence that Zhang "had been contemplating the setting up of a trust" prior to the dispute with Petitioners, noted Zhang's explanation that transfer of ownership in SETL was "part of the process of settling the trust for the benefit of her family," and indicated that both Zhang and Asiatrust maintained that Zhang had "no direct or indirect beneficial interest under the trust."  *See id.* ¶ 73.  The Appellate Division of the High Court of Singapore, by contrast, found no error in a lower court's finding, applying a "balance of probabilities" standard, that Zhang had intended to retain beneficial ownership of moneys in SETL's bank accounts.  *See* Borrelli Decl., Ex. 32 (Judgment, *Zhang v. La Dolce Vita Fine Dining Group Holdings Ltd.* ¶¶ 73, 86 [2023] SGHC(A) 22 (June 27, 2023)).

§ 6211(b); *In re adidas AG*, 2023 WL 3687779, at *2 ("New York courts routinely vacate attachment orders if the petitioner fails timely to move to confirm the order.").  Although Petitioners moved for confirmation of the *ex parte* attachment order in late 2019, they asked about two months later that the motion be "deemed withdrawn."[53]  For years thereafter, Petitioners failed to renew their motion to confirm and instead occupied themselves with other things—such as preparing amendments to their original petition and launching proceedings to confirm the Arbitral Awards—all while the *ex parte* attachment order lay dormant.  Whether intended or not, the effect of proceeding in this manner has been to flout the strictures of New York's statutory framework, or at least to stretch them past the breaking point.  *See Chaar v. Arab Bank P.L.C.*, 651780/2002, 2022 WL 3340008, at *2 (N.Y. Sup. Ct. Aug. 10, 2022) ("Plaintiffs cite no support for the proposition that the drastic remedy of attachment may linger pending confirmation while evidence is gathered . . . ."), *appeal dismissed*, 220 A.D.3d 479 (1st Dep't 2023).[54]  As the First Department observed, the New York State Legislature "can hardly be said to have contemplated proceedings extending over a period of years," *see Gruberman*, 641 N.Y.S.2d at 618, but that is exactly what transpired here.  This extraordinary delay is itself grounds for denial of Petitioners' long-postponed motion to confirm the *ex parte* attachment order.

---

[53] *See* Letter at 3, ECF No. 31, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Jan. 24, 2020).

[54] Although Zhang recommended in early January 2020 that the Court postpone consideration of Petitioners' pending confirmation motion, *see* Letter at 2, ECF No. 29, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, No. 19-mc-00536 (S.D.N.Y. Jan. 6, 2020), and did not object to the subsequently proposed deferral of Petitioners' motion to confirm the *ex parte* attachment order, *see* [Proposed] Order, ECF No. 32, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, 19-mc-00536 (S.D.N.Y. Jan. 24, 2020), that cannot excuse the extraordinary delay here, among other things because Petitioners' proposal contemplated the filing of a renewed motion to confirm no more than twenty-one days after completion of discovery on the ownership issue, *see id.* ¶ 10, and Petitioners themselves declared in June 2021 that the time to renew their confirmation motion was "ripe."  *See* Pre-Mot. Conf. Letter at 1-2, ECF No. 87, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, No. 19-mc-00536 (S.D.N.Y. June 24, 2021).

18

### III.    The Jurisdictional Basis Of Petitioners' Action Is Dubious

Some courts in the Second Circuit have found that *quasi in rem* jurisdiction may be exercised to "permit a party to collect on an arbitration award" even absent a showing of "minimal contacts."  *See George Moundreas & Co.., S.A. v. Jinhai Intelligent Mfg. Co. Ltd.*, 20-cv-2626, 2021 WL 168930, at 9 n.9 (S.D.N.Y. Jan. 18, 2021).  However, in *Glencore AG v. Bharat Aluminum Co. Ltd.*, 10-cv-5251, 2010 WL 4323264 (S.D.N.Y. Nov. 1, 2010), where the plaintiff sought to confirm an arbitral award issued in its favor in a foreign proceeding, the court held that even though one of the defendants "may have property within this Court's jurisdiction," the exercise of *quasi in rem* jurisdiction over such defendant was nevertheless foreclosed because the defendant's contacts with New York "would not allow [it] to foresee itself being haled into [New York] court over a dispute unrelated" to the property.  *See Glencore AG*, 2010 WL 4323264 at *10.  A similar situation obtains here.  Under the *Glencore AG* analysis, jurisdiction over Zhang may not properly be asserted on a *quasi in rem* basis—even assuming she had a property interest in the Subject Paintings—because Zhang had no reason to foresee that she would be haled into a New York court over a commercial dispute in China.  *See id.*; *see also Harbour Victoria*, Tr. 6:14-7:16 (adopting the *Glencore AG* analysis and finding that "quasi in rem attachment prior to the entry of judgment upon a confirmed arbitration award requires minimum contacts, as well as specifically identified property of the debtor").

### IV.    Petitioners Have Not Satisfied The Statutory Requirements For Confirmation Of The *Ex Parte* Attachment Order

Petitioners purport to bring this action under N.Y. C.P.L.R. § 7502(c), which provides for attachment "in connection with an arbitration that is pending or that is to be commenced."  *See* Sec. Am. Pet. ¶ 1; N.Y. C.P.L.R. § 7502(c).  A petitioner seeking attachment under Section 7502(c) must establish that the arbitral award at issue "may be rendered ineffectual without such

provisional relief." *See* N.Y. C.P.L.R. § 7502(c); *see also Swift Splash*, 2010 WL 3767131, at

*2; *Iraq Telecom Ltd. v. IBL Bank S.A.L.*, 43 F. 4th 263, 269 (2d Cir. 2022); *Krineta Enters. Co.

Ltd. v. Lavidas*, 22 N.Y.S.3d 137 (N.Y. Sup. Ct., N.Y. Cnty. 2015) (denying confirmation of

attachment order where, among other things, plaintiff failed to demonstrate that other assets were

insufficient to satisfy foreign judgment).  In addition, a petitioner must show that (1) "there is a

cause of action," (2) "it is probable that the plaintiff will succeed on the merits," and (3) the

"amount demanded from the defendant exceeds all counterclaims known to the plaintiff."  N.Y.

C.P.L.R. § 6212(a); *see also Iraq Telecom*, 43 F. 4th at 269.

      Petitioners have not satisfied the statutory prerequisites for confirmation of the *ex parte*

attachment order.  For starters, Petitioners have not demonstrated that attachment is necessary to

give effect to the Arbitral Awards.  Petitioners focus on the sufficiency of *Zhang*'s assets, *see*

Pet. Br. at 16-17, but the Arbitral Awards were issued against GL Holdings and QJL

Development as well, and Petitioners make no argument that recovery cannot be had from one or

the other of these entities (or their successors).[55]  Moreover, Petitioners claim to have "recently

recovered" over $70 million from "various SETL bank accounts"—*see id.* at 3, 17; Borrelli

Decl. ¶ 46—but do not make clear whether that source of recovery has been exhausted or

whether additional avenues of recovery remain.

      Nor have Petitioners established that they are likely to "succeed on the merits."  N.Y.

C.P.L.R. § 6212(a).  Petitioners are quick to claim that they have "already succeeded on the

merits" of the underlying arbitration proceedings, *see* Pet. Br. at 18, but they ignore one of their

own cited cases, *BSH Hausgeräte GmbH v. Kamhi*, 282 F.Supp.3d 668 (S.D.N.Y. 2017), where,

---

[55] Borrelli states without citation that various companies in which Zhang claimed to own shares—including GL
Holdings—have "since been dissolved," *see* Borrelli Decl. ¶¶ 36(iii)-(v), but he does not elaborate further and
makes no mention of QJL Development.

as here, confirmation of an *ex parte* attachment order was sought *after* the underlying arbitral award had already been issued. *See Kamhi*, 282 F. Supp. 3d at 670-71. The *Kamhi* court did not regard the "likelihood of success on the merits" test as having been satisfied *per se* by arbitral judgment in the petitioner's favor but instead undertook a close analysis of the likelihood of the petitioner's success on the merits of its pending motion to confirm the arbitral award. *See id.* at 672-75. The Court should adopt the same approach here and look to the likelihood of Petitioners' success in the Second Confirmation Proceeding. For all the reasons stated in support of Zhang's motion to dismiss the Confirmation Proceeding, Petitioners are not likely to succeed in confirming the CIETAC arbitral awards, among other things because Petitioners have not perfected their *quasi in rem* jurisdictional basis, because this Court is not an appropriate forum for confirmation of the foreign arbitral awards, and because confirmation would be substantively improper under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards.[56]

## V.    Petitioners' Fraudulent Conveyance Theory Is Meritless

Petitioners argue in the alternative that what they characterize as a "purported conveyance to Apex" should be "set aside or disregarded" as fraudulent. *See* Pet. Br. at 20. As an initial matter, it is unclear what "conveyance" Petitioners have in mind. Petitioners allege that payment for the Subject Paintings was made in three installments, each following the same pattern: A wire transfer from a purportedly Zhang-controlled bank account to Wang, followed by a wire transfer in the same amount from Wang to Christie's in New York. *See* Sec. Am. Pet.

---

[56] *See* Fisher Decl., Ex. O (Mem. of Law in Support of Mot. to Dismiss Pet. to Confirm & Enforce Foreign Arb. Awards, ECF No. 38, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, No. 23-cv-06273 (S.D.N.Y. Feb. 27, 2024)); *id.*, Ex. Q (Reply Mem. of Law in Further Support of Mot. to Dismiss Pet. to Confirm & Enforce Foreign Arb. Awards, ECF No. 44, *La Dolce Vita Fine Dining Co. Ltd. v. Zhang*, No. 23-cv-06273 (S.D.N.Y. Mar. 26, 2024)).

¶ 54; Borrelli Decl. ¶¶ 57, 59, 62; Pet. Br. at 11-12.  These allegations, even if taken as true, do

not describe a conveyance of the Subject Paintings to Apex; what is alleged is a succession of

funds transfers, not a conveyance of paintings, and on Petitioners' view, Apex does not even

figure in the sequence.  The statutory provision relied upon by Petitioners is thus inapposite, for

Petitioners do not seek to attach the "property conveyed"—*i.e.*, the transferred funds—but

instead seek to attach the Subject Paintings.  *See* N.Y. Debtor & Creditor L. § 278(1)(b) (2019).[57]

Petitioners' reference to Zhang's "presumed insolvency," *see* Pet Br. at 21, is also

puzzling:  The purported funds transfers are alleged to have occurred in mid-2014, just a few

months after Petitioners allegedly provided Zhang with over $244 million.  *See id.* at 8; *see also*

*id.* at 22 (claiming that Zhang "accepted $254 million from Petitioners"); Borrelli Decl. ¶ 12

(noting that an "additional $10 million" was wired in June 2014).  By Petitioners' own account,

then Zhang was very far from the brink of insolvency.  If there is a presumption of insolvency

that needs rebutting, Petitioners themselves have rebutted it.  Petitioners also offer no evidence

that Zhang has ever sought possession of the Subject Paintings, much less retained "possession,

benefit, or use" of the Subject Paintings, *see Zapoteco v. Rapi, Inc.*, 20-cv-6335, 2021 WL

1964548, at *3 (E.D.N.Y. May 17, 2021), and as for the "general chronology of the events," *see*

*id.*, every one of the alleged funds transfers predated the commencement of the arbitration

proceedings by several months and predated the issuance of the Arbitral Awards by several

years.  *See* Sec. Am. Pet. ¶¶ 2, 54.

In addition, the Arbitral Awards themselves controvert Petitioners' insinuation that

Zhang foresaw looming potential liability in the wake of the commercial transaction with

---

[57] Although the statutory provision has been repealed and replaced, it continues to govern with respect to transfers made prior to the April 4, 2020 effective date of the repeal.  *See Ray v. Ray*, 799 F. App'x 29, 31 n.1 (2d Cir. 2020) (summary order).

Petitioners. The arbitral tribunal found "no evidence to prove fraudulent knowledge or intention" on Zhang's part and declined even to "draw an inference of fraud" against her, ultimately predicating its awards against the respondents on a theory of negligent misrepresentation. *See Borrelli Decl.*, Ex. 3 (CIETAC Beijing Partial Award No. 0591 ¶¶ 340-43 ("[T]he Tribunal does not find it probable that the alleged fraudulent scheme existed."), ¶ 373(1)); *id.* Ex. 4 (CIETAC Beijing Partial Award No. 0592 ¶¶ 329-332A, 368(1)).[58] Moreover, the tribunal found, *prima facie*, "no evidence" of Zhang's involvement in the "creation, preparation and/or review" of the financial information at issue, *see id.* Ex. 3 ¶ 340, and "no cogent evidence" to show that *any* "fraudulent manipulations were made" to that financial information by *any* of the respondents. *See id.* ¶ 401; Ex. 4 ¶¶ 329, 332A

Petitioners' fraudulent conveyance argument also poses a jurisdictional conundrum: Because Petitioners bring this action pursuant to the Court's purported *in rem* or *quasi in rem* jurisdiction with respect to the Subject Paintings, *see* Borrelli Decl. ¶ 18, a fraudulent conveyance theory that is predicated on funds transfers predating the purchase of the Subject Paintings (including funds transfers between foreign banks) falls outside the ambit of the limited jurisdiction invoked here. *See Glencore AG*, 2010 WL 4323264, at *5 ("The effect of a judgment in such a case is limited to the property that supports jurisdiction." (citation and internal quotation marks omitted)).

---

[58] Petitioners contend that potential future liability was "on [Zhang's] mind" at the time of the alleged funds transfers, *see* Pet. Br. at 22, but their principal support is an enigmatic email communication from March 2014 in which one bank employee conveyed to another her purported "understanding" of the reason for a different funds transfer apparently requested by Zhang. *See* Borrelli Decl. Ex. 26 at E5672-73. The source of the bank employee's purported "understanding" is unclear, and as Petitioners acknowledge, Zhang has challenged the accuracy of that email in foreign court proceedings. *See* Pet. Br. at 8. Petitioners also cite an untranslated Chinese-language message—*see id.* 22, Borrelli Decl. Ex. 11—and a couple of paragraphs from a "Witness Statement of Zhang Lan" dated September 8, 2017 that recounts disruption of business operations by *Petitioners'* corporate owner. *See* Borrelli Decl. ¶¶ 3-4; *id.* Ex. 21 at ¶¶ 138(3), 139.

## CONCLUSION

For the foregoing reasons, Zhang respectfully requests that this Court deny Petitioners'

Motion, vacate the *Ex Parte* Attachment Order, and grant such other and further relief as this

Court deems appropriate.

Dated:  March 10, 2025
        New York, New York

Respectfully submitted,

**BINDER & SCHWARTZ LLP**

By:     /s/ Eric B. Fisher
        Eric B. Fisher
        M. Tomas Murphy
        675 Third Avenue, 26th Floor
        New York, NY 10017
        (212) 510-7008
        efisher@binderschwartz.com
        tmurphy@binderschwartz.com

        *Attorneys for Zhang Lan*